350 So.2d 1271 (1977)
Rodney HOPKINS et al., Plaintiffs-Appellees,
v.
DEPARTMENT OF HIGHWAYS, State of Louisiana, Defendant-Appellant.
No. 6079.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
*1272 Mengis, Roberts, Durant & Carpenter by Charles M. Roberts, Sharon P. Frazier, Baton Rouge, for defendant-appellant.
Davis & Simmons by Kenneth N. Simmons, Many, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and FORET, JJ.
DOMENGEAUX, Judge.
Plaintiffs, Rodney Hopkins, Otis Faust, and Melvin Raiford, brought this action to recover damages to their property allegedly caused by the Department of Highways. All parties are property owners in Sabine Parish, Louisiana. The Highway Department owns a 5.8 acre tract upon which it operates a highway maintenance unit. Faust owns 5 acres adjoining the western boundary of the Highway Department tract; Hopkins owns 5 acres immediately west of the Faust tract; and Raiford owns 30 acres on the western boundary of the Hopkins tract. The Raiford tract also borders the northern boundary of the Hopkins and Faust tracts.
A small depression runs through the Highway Department's tract and across the Raiford, Hopkins, and Faust tracts, which constitutes a natural drain.
Plaintiffs allege that over a period of several years the Highway Department allowed oil, grease, and tar waste to enter and contaminate the water in the drain. Plaintiffs further allege that large amounts of sand from the Department property entered the drain. They aver that as a result of these activities the soil and trees surrounding the stream have been damaged. Furthermore, the stream is no longer fit for watering livestock and has become completely obstructed in several places.
A hearing was held on March 24, 1975, on defendant's exceptions of no cause of action and prescription and plaintiffs' prayer for preliminary injunction. The exceptions and the prayer for injunction were consolidated for trial purposes. After considerable testimony was adduced the hearing terminated and it was agreed that all evidence thus far taken would be used at trial.
Trial on the merits was held on September 29, 1975. Counsel for plaintiffs moved that all the witnesses, except parties or their representatives, be sequestered. The trial judge granted the Order.
During the trial, plaintiffs' counsel objected to the use of two of defendant's sequestered witnesses on the grounds that they had violated the sequestration order. The trial judge sustained the objection and disqualified the witnesses from testifying. When counsel sought to make a proffer of proof the trial court stayed the proceedings in order to allow defendant to seek supervisory writs. A different panel of this court denied supervisory writs. (Hopkins v. Department of Highways, State of Louisiana, No. 5302, Nov. 13, 1975). At the time the application was pending defendant moved to substitute the offending witnesses with two new experts and for leave to reinspect plaintiffs' property. This motion was denied by the trial court subsequent to the writ denial.
*1273 The case proceeded to conclusion. The trial judge awarded damages in the amount of $11,174.00 for Mr. Hopkins, $14,773.00 for Mr. Raiford, and $7,646.00 for Mr. Faust's widow and heirs. Faust had died during the proceedings and his widow and heirs were substituted as parties. The trial judge found that the stream bed was filled with sand in places, forcing the stream from its normal bed and over a large area, especially after rain. He also determined that tar, slush, grease, and oil were found under the sand and concluded that these pollutants came primarily from a grease rack where their Department trucks were regularly serviced and from a tar tank on defendant's property near the grease rack.
The threshold issue raised on this appeal revolves around the scope of the power of the trial judge when there has been a violation of the sequestration order.
Sequestration of witnesses is an ancient device at least as old as the Bible.[1] It serves the dual purpose of preventing the witnesses from being influenced by prior testimony and strengthening the role of cross-examination. State v. Ardoin, 340 So.2d 1362, 1363 (La.1976); State v. McDaniel, 340 So.2d 242 (La.1976). In Louisiana its statutory origin can be traced to Article 371 of the 1928 Code of Criminal Procedure. That Article provided that the sheriff would take charge of a witness placed under the rule in order to prevent violation of the sequestration order. If a violation did occur the witness was automatically disqualified from testifying. The trial judge had limited discretion to permit testimony under some circumstances and a violating witness could be called to testify if the violation took place without the knowledge and connivance of the party calling him.
The new Code of Criminal Procedure deleted the provision requiring the sheriff to take charge of the witnesses and the provision dealing with automatic disqualification of violating witnesses. Article 764[2] gives the court wide discretion in modifying the sequestration order and does not specify penalties for its violation.
Express authority for sequestration of witnesses did not appear in the Code of Civil Procedure, however, until a 1966 amendment to Article 1631.[3] That Article now provides:
"The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
On its own motion the court may, and on request of a party the court shall, order that the witnesses, other than parties, be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interest of justice, the court may exempt any witness from its order."
Thus, a party has a right to request sequestration of witnesses, qualified by the power of the trial court to exclude a witness from the rule in the interest of justice. The Article does not deal expressly with expert witnesses; however, the comments following the Article state in part:
"Except in most unusual situations, persons called to testify as expert witnesses are not excluded from the courtroom *1274 during the trial of the case. Since they are not called to testify to the facts of the case, but only to give their expert opinions to hypothetical facts, there would seldom be either reason or necessity for excluding them. This article gives the trial judge discretion either to exempt the expert witness from the operation of his order, or to exclude him from the courtroom in those rare cases where the interest of justice may demand it."
Expert witnesses would normally be exempted from the rule since their function is to give opinions on facts which form the basis of the evidence. It would be impractical to sequester most expert witnesses from the trial because to do so may require repetition of numerous and detailed facts already placed into evidence by other witnesses each time an opinion was solicited.
There may be circumstances, however, when it becomes desirable to place expert witnesses under the rule. This occurs when the expert is also used as a fact witness and there is danger that the expert will be influenced by other testimony. Thus while it may be of limited utility to sequester an aerospace engineer called upon to testify as to faulty plane design, it may be useful to sequester an automobile mechanic called upon to testify as to whether an automobile's brakes were working properly before a collision.
In this case the trial judge placed expert witnesses under the rule. We find no abuse of his discretion. There existed the possibility that the expert witnesses sequestered would testify as to facts concerning the physical condition of the property. The trial judge was in a better position to make the determination and his ruling should not be upset on appeal.
Article 1631 of the Code of Civil Procedure does not specify the sanctions available to the court when there has been a violation of the sequestration order. There is a paucity of decisions on the subject and courts seek enlightenment from cases developed in the criminal sphere. Aetna Casualty and Surety Company v. Braud, 327 So.2d 183, 186 (La.App. 4th Cir. 1976). A review of the criminal cases indicates that three sanctions are available. A violating witness, of course, can be placed in contempt. He can also be allowed to testify with the violation going to the credibility of the evidence or can be disqualified altogether. For example, in State v. Badon, 338 So.2d 665 (La.1976), the Supreme Court found no error in allowing a violating witness to testify because the trial judge determined that the testimony was based upon the witness' own memory. In State v. Watson, 305 So.2d 923 (La.1974), the Court approved the trial judge's instructions to the jury to disregard the testimony of witnesses who had violated the rule. In State v. Holmes, 305 So.2d 409 (La.1974), the Court approved the disqualification of a sequestered witness who had remained in the courtroom throughout the trial. In short, the choice of remedy imposed for violation of a sequestration order rests in the sound discretion of the trial judge. See Work of the Louisiana Appellate Courts for the 1974-75 TermCriminal Trial Procedure, 36 La.L.Rev. 605, 621-624 (1976).
Giving wide latitude to the trial judge conforms to our reading of Article 1631 of the Louisiana Code of Civil Procedure. The provision makes no specification regarding the penalties for violation of a sequestration order. In Benoit v. Camelle, 300 So.2d 850 (La.App. 3rd Cir. 1974), writ denied, 304 So.2d 668 (La.1974), this court approved the disqualification of a witness who had violated the sequestration order. In Aetna Casualty and Surety Company v. Braud, supra, the Fourth Circuit permitted the trial judge to let a violation of the sequestration order go to the weight of the testimony. Finally, Article 225 of the Louisiana Code of Civil Procedure authorizes punishment for contempt when an order of the court is violated. Thus, all three alternatives are available to the trial court when there is a violation.
In the present case the trial judge inquired into the circumstances surrounding the alleged violation. Defendant's counsel requested a recess during the cross-examination *1275 of one of plaintiffs' witnesses. At that time the two attorneys for the defendant entered into a discussion with Mr. Terry and Mr. Futrell, defendant's two expert appraisers, in the same room. Also present in the room was Mr. Cramer, a former expert witness who was excused from testifying at trial but who sat in the courtroom taking notes in order to provide defendant's counsel with a record of expert testimony. There is some question as to whom spoke with whom, but the trial judge determined that some evidence in the case was discussed. The court ruled that a violation had taken place and disqualified Terry and Futrell from testifying. We will not modify this determination on appeal. Although disqualification of witnesses may be the most severe penalty, the trial judge was more familiar with the physical surroundings of his courtroom and he was in a better position than us in determining the severity of the violation. We will not substitute our judgment for that of the trial court, even though we may feel that a lesser sanction may have been more appropriate.
Defendant contends that a proffer of testimony from the disqualified witnesses should have been allowed under Louisiana Code of Civil Procedure Article 1636.[4] We find that the trial judge erred in disallowing the proffer. Article 1636 is mandatory, not discretionary. However, since we have been unable to find manifest error in the disqualification of the witnesses, the proffer would serve no purpose on this appeal. The issue is moot.
We feel obligated nevertheless to remand this case because of its peculiar factual setting. Defendant has alleged in its brief that its two disqualified witnesses would have offered rebuttal testimony to that of Mr. Stevens, plaintiffs' expert appraiser. Mr. Stevens not only testified as to the appraisal value of plaintiffs' property but to the issues of negligence and damages. It is plain that the trial judge relied heavily on this testimony in reaching this decision. Defendant sought to substitute his two disqualified experts with two new witnesses. Plaintiffs would not permit the new experts to inspect their property and the court denied a motion compelling inspection after our denial of the supervisory writ.
Looking to the totality of the circumstances, we feel that defendant's case has been unduly hampered. This appears to be one of those situations where we must exercise our power under Louisiana Code of Civil Procedure Article 2164[5] and remand the case. Foret v. Aetna Life & Casualty Company, 337 So.2d 676 (La.App. 3rd Cir. 1976); State of Louisiana, through the Department of Highways v. Willis, 278 So.2d 893 (La.App. 3rd Cir. 1973); Hamilton v. Hamilton, 258 So.2d 661 (La.App. 3rd Cir. 1972); Paletou v. Sobel, 185 So.2d 95 (La. App. 4th Cir. 1966); Turpin v. Turpin, 175 So.2d 357 (La.App. 2nd Cir. 1965). In the interest of being fair to all the parties, the Department of Highways should be allowed to use two new expert witnesses in the presentation of their case. Reaching the substantive issues would require a ruling on an incomplete record.[6] To hold otherwise *1276 would violate the underlying philosophy of our Code of Civil Procedure under which the trial of a case is to protect substantive rights and serve as a search for the truth. C.C.P. Art. 5051; McMahon, Louisiana Code of Civil Procedure, 21 La.L.Rev. 1, 21 (1960).
This does not mean, however, that a party has an unqualified right to substitute witnesses when a violation of the sequestration order has occurred. Each case must turn upon its own facts.
Therefore, in the interest of discovering truth and under the authority vested in us by Article 2164 of the Louisiana Code of Civil Procedure, we reverse the judgment of the district court.[7]
It is hereby Ordered that the case be remanded to the trial court for the limited purpose of allowing the defendant to have two new expert appraisers inspect the property and to give testimony, and for the taking of any proper rebuttal testimony.
It is further Ordered that the trial court render a new judgment based upon the complete trial record as supplemented by the above ordered testimony. All costs are to be assessed at the time the new judgment is rendered and according to the tenor of that judgment.
REVERSED AND REMANDED.
NOTES
[1] In Daniel 13:50 it is written that two elders had charged Suzanna with adultery. False evidence had been used to condemn her. Daniel had the two elders separated. When each was questioned separately, they gave different stories. See Weinstein's Evidence, Par. 615[01].
[2] Article 764 provides: "Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
[3] Although sequestration of witnesses was practiced prior to the amendment, there was no express authority in the Code. See LeBlanc v. Gauthier, 174 So.2d 267 (La.App. 3rd Cir. 1965); Wilson v. Marquette Casualty Co., 156 So.2d 331 (La.App. 4th Cir. 1963), writ refused, 245 La. 96, 157 So.2d 235 (1963).
[4] Article 1636 provides: "When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.

If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party to make a record in the same manner of any evidence bearing upon the evidence held inadmissible."
[5] Article 2164 provides: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."
[6] We were impressed by the amount of expert testimony already introduced by the Department of Highways that did appear in the record. There was testimony to the effect that higher levels of hydrocarbons were found on land above and immediately east of the defendant's tract than on plaintiffs' land, which was lower and west of the Department's tract. There was also testimony that some of the oil observed in the stream was vegetable in nature and came from the decomposition of leaves and other natural sources. Consequently, there could be a question as to the source of some of the pollution and the extent of the impact of the highway maintenance unit upon plaintiff's land. Since we are remanding the case, however, we express no opinion upon the sufficiency of the evidence. A complete determination can be made upon remand when all the facts are introduced.
[7] We note that the trial judge cast the Highway Department with all costs of the proceedings, including plaintiff's expert witness fees. La. R.S. 13:4521 exempts political subdivisions from paying court costs, except stenographer's fees. Although the courts make an exception and require the Highway Department to pay expert witness fees as costs in expropriation cases, this exception has not been extended to damage suits of this type where there has been no "taking". State, through the Department of Highways v. Reimers, 249 La. 1044, 192 So.2d 558 (1966); Dragon v. Orleans Parish School Board, 347 So.2d 306 (La.App. 4th Cir. 1977); McCallum v. State, Department of Highways, 246 So.2d 46 (La.App. 3rd Cir. 1971).