YELVERTON, Judge.
Both parties appeal rulings in provisional proceedings arising out of a suit for divorce. At issue are custody of the couple’s sixteen year old son, alimony pendente lite, child support, possession of the family home, and contempt.
Lottie Lambert moved out of the family home and sued Vernon Lambert for a divorce in September, 1981. Several rules to show cause were simultaneously issued returnable on November 6,1981. Those rules were never heard because the parties agreed to a judgment which was signed by consent on the return date following a pretrial conference. The November 6, 1981 judgment (1) gave custody of the couple’s then fifteen year old son to the mother, (2) gave possession of the family home to the father, (3) made Vernon responsible for payment of the community debts, (4) ordered Vernon to pay the first $200 of the monthly utility bills at the community residence, and (5) recognized Lottie’s right of continued access to and use of her beauty shop which was located in the community residence.
On February 15, 1982, litigation resumed with the filing of new rules. Lottie sought alimony, child support, the community residence, and a finding that her husband was in contempt, the latter based on Vernon’s alleged violations of the earlier judgment. Vernon answered and reconvened requesting a change of custody, as well as alimony and child support.
Hearings were held on some of these rules on February 22,1982; the others were heard on March 1, 1982. The trial court rendered judgment April 6, 1982, and signed a formal decree on May 11, giving custody of the child and possession of the family home to the father, granting the father alimony in the amount of $350 a month, declining to order the mother to participate in child support, and declining to hold the father in contempt of court. These are the rulings which the parties aggrieved have appealed.
CUSTODY
Scott, now sixteen, has lived with his father in the family home since the separation occurred. Although the November 6, 1981 judgment awarded permanent custody of the boy to his mother, he continued to live with his father. In the hearing on the rule to change custody, Scott expressed his desire to continue living with the father.
The trial court gave careful consideration to all of the circumstances, including the strong ties that exist between father and son and the father’s proven ability to care for the boy. The court considered the lay testimony (medically unsubstantiated in the record) that Scott may be an epileptic. The trial judge gave due but not controlling weight to Scott’s preference to live with his father. Hebert v. Hebert, 255 So.2d 630 (La.App. 3rd Cir.1971). After considering all of the factors in the record affecting the best interests of the child (La.Civ.Code art. 157), the trial court concluded that custody should be granted to the father. A trial court’s determination as *272 to custody is entitled to great weight. Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). We find no error. We affirm the award of custody to the father.
POSSESSION OF THE FAMILY HOME
Under the initial judgment of November 6, 1981 the husband was granted the use and occupancy of the family home, subject to the wife’s unrestricted right to use the beauty shop. The appealed judgment grants to the father the continued use and occupancy of the residence. LSA-R.S. 9:308 requires the trial court to award possession of the family residence to the spouse in accordance with the best interest of the family, after considering the relative economic status of the spouses and the needs of the children. The trial judge considered the fact that the child has been and will continue to live in the residence with his father, and the court also considered the relative economic circumstances of the spouses in making its award of the use of the residence to the husband. We find no error in this ruling.
CONTEMPT
When Lottie went to work at her beauty shop one Tuesday morning, she discovered that the outside door used by her and her customers had been padlocked. After she communicated this fact to her attorney and he in turn notified Vernon’s attorney, the padlock was removed by noon of that day and no further interference of that nature has occurred. There was also evidence that on one or two occasions Vernon parked his pickup in the common driveway used by the residence and the beauty shop customers, thereby annoying the customers. The trial court chose not to hold Vernon in contempt for this conduct but sternly reprimanded him in open court and warned him not to repeat it.
The trial judge found that Vernon’s violations were technical only, from which we infer the finding that his conduct did not rise to the dimension of a willful disobedience of a direct order, which is required by La.C.C.P. art. 224 in order to sustain a holding in contempt. Lambert v. Adams, 347 So.2d 883 (La.App. 3d Cir.1977). Also, proceedings for contempt must be strictly construed, and contempt proceedings should not be resorted to where other remedies are available. Lambert v. Adams, supra. The trial court doubted whether a contempt had occurred and resolved that doubt in favor of the defendant in rule. The court chose to utilize a reprimand and warning, which was apparently effective. Under all the circumstances we agree that the decision not to hold Vernon in contempt was a proper one.
ALIMONY AND CHILD SUPPORT
The judgment of May 11, 1982 (the judgment appealed from) rejected the wife’s claim for alimony pendente lite, rejected the husband’s claim for child support, eliminated the previously imposed obligation of the husband to pay the first $200 toward the utilities on the house as well as his obligation to pay the monthly community bills, and granted the husband alimony pen-dente . lite to be paid by the wife in the amount of $350 per month retroactive to March 1, 1982. In reaching these conclusions the trial court stated and we quote:
“Recent events compel the conclusion that Mrs. Lambert’s request for alimony be denied and that Mr. Lambert’s request be granted. His sole income is from Social Security disability benefits, which comes to him in the form of a check made payable to him and his wife, as joint payees. Apparently the plaintiff has refused to co-sign the checks and defendant’s bank has refused to cash them without her signature, and she has had $195 of the check diverted to her. Thus Vernon Lambert has been completely deprived of income. So as long as this situation continues I must conclude that Vernon E. Lambert does not have sufficient income for his maintenance, and that Lottie N. Lambert has sufficient means to provide for his maintenance. Thus I hereby rule that Vernon E. Lambert is entitled to an award of alimony in the amount of $350 per month, to be paid by Lottie N. Lambert.”
*273 The “recent events” referred to in the above quotation can only have reference to evidence adduced at a hearing on a rule for injunction filed by Vernon on March 15, 1982 and heard on March 22. This action was taken after the rules now on appeal had been taken under advisement. The hearings on the rules to show cause forming the subject of this appeal were completed and taken under advisement on March 1. It was improper for the trial court to have used evidence taken in subsequent proceedings to decide matters already taken under advisement in earlier proceedings.
Had the trial court chosen to do so after taking the rules under advisement on March 1, it could have ordered a new trial on its own motion. La.C.C.P. Article 1971. Or it could have reopened hearings on the rules and heard additional testimony. La.C. C.P. Articles 1631 and 1632. By either means, further evidence could properly have been considered. As it turned out, however, the use of subsequent injunction proceedings, procedurally unrelated to the rules that had been taken under advisement, as evidence bearing on those rules, was a violation of basic due process since it was done without notice to the parties. Lottie, as defendant in rule in the later injunction proceeding, was entitled to know that the evidence taken at the hearing conducted therein would be used by the court either as a partial new trial on the earlier rules, or as a reopening of the hearing on the rules. The record contains nothing to indicate that the parties were made aware that the injunction hearing evidence would be so used.[1]
We find it necessary, therefore, to amend the judgment respecting alimony by considering only the evidence properly adduced on the subject. Since the entire record of the rules for alimony is before us, we will consider that evidence and render judgment accordingly.
The evidence shows that Vernon was receiving $853.30 in Social Security benefits because of his total disability from a back injury. After they stopped living together, this was reduced by $195, representing the portion paid for the benefit of Lottie, and by a like additional amount representing the portion paid for the benefit of the dependent, Scott. However, the judgment granting custody of Scott to Vernon will restore that $195 and he will be entitled to receive $658.30.
The evidence also shows that Lottie makes at least $200 a week out of her beauty shop business, but out of this she must pay the expenses of its operation. She must also maintain herself in a separate apartment. The husband is paying mortgage notes on the residence totaling $244 a month. As evidenced by affidavits filed into the record of their respective expenses, it appears that their needs are approximately the same. We believe that a proper balance can be struck considering their relative incomes and needs, as well as the obligation of child support which each owes, by ordering the husband to continue paying the mortgage notes on the residence and the utilities there (which includes the beauty shop operation) and that the wife pay to the husband $200 a month, apportioned as $100 a month for child support for Scott and $100 a month for alimony.
For the reasons assigned, the judgment of the trial court is affirmed insofar as it awards custody of the minor child to the husband and possession of the family home to him. The judgment denying the rule for contempt against the husband is likewise affirmed. The judgment rejecting the rule *274 for alimony by the wife is affirmed. The judgment rejecting the husband’s claim for child support is reversed. The judgment awarding the husband $350 for alimony against the wife is reversed. Judgment is rendered ordering the wife to pay the husband $100 a month as child support. The judgment ordering the wife to pay the husband $350 a month alimony is amended to reduce the alimony pendente lite to the sum of $100 a month, and rendered.
All costs of appeal are to be borne equally by the parties.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.

. Actually, the injunction hearing evidence did not establish whether or not Vernon was getting his Social Security checks. All that took place at that hearing was the interrogation by one attorney of opposing counsel under oath. Neither party testified. There was no evidence that Lottie had refused to co-sign the Social Security checks or that the bank had refused to accept them for deposit. At best, the testimony supports only a weak inference that such had occurred. To demonstrate how uncertain this question remains even to this day (as far as the record is concerned), we mention that in oral arguments on appeal, one attorney declared that Vernon has never missed a single check, while the other as vehemently asserted that he has been totally cut off.