453 So.2d 314 (1984)
Freddie A. COUTEE, et al., Plaintiffs-Appellants,
v.
AMERICAN DRUGGIST INSURANCE COMPANY OF CINCINNATI, et al., Defendants-Appellees.
No. 83-781.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1984.
Writ Denied October 26, 1984.
*315 Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for plaintiffs-appellants.
Stafford, Stewart & Potter, Russell Potter, Alexandria, for defendants-appellees.
Before DOMENGEAUX, FORET and STOKER, JJ.
DOMENGEAUX, Judge.
Appellants Freddie A. Coutee and Rita Coutee, individually and on behalf of their minor children, and their homeowner's insurer, American Bankers Insurance Company (by subrogation), filed a petition for damages against defendants Rapides Parish Sheriff Marshall T. Cappel, former deputy Bruce Vanderhoeven, and their liability insurers, American Druggist Insurance Company of Cincinnati and Lincoln Insurance Company. Plaintiffs-appellants alleged that on July 20, 1981, Rapides Parish Sheriff's Deputies used excessive force in executing a search warrant which caused damage to the inside of their trailer home due to the discharge of a tear gas cannister. Plaintiffs also sought damages for physical pain and suffering and mental anguish. The law enforcement officers, also in possession of an arrest warrant, were attempting to arrest fugitive Ronnie Wilkinson (brother of Rita Coutee plaintiff-appellant), on outstanding charges of aggravated kidnapping and simple assault.
The trial judge determined that the law enforcement officers, based upon all the facts and circumstances known to them at *316 the time, acted upon a reasonable belief that the fugitive was inside the trailer. The trial judge concluded that the use of a tear gas cannister to gain access to the trailer was reasonable and further, that it was the best means possible to execute the search warrant [given the exigencies of the situation]. The trial judge also found that based upon the totality of the circumstances, the force used was not excessive or unreasonable. Plaintiffs' suit was dismissed.
The plaintiffs-appellants have devolutively appealed, alleging error on the part of the trial court as follows:
1. In failing to find that the defendants, possessing the search warrant admitted into evidence, engaged in an unreasonable search and excessive use of force and violence against the plaintiffs' home;
2. In improperly using evidence taken in subsequent proceedings to decide matters in the case at bar and that such use without notice to the parties violated basic due process;
3. In failing to permit several witnesses to testify;
4. In failing to award damages to the plaintiffs.

FACTS
The trial judge summarized the incidents of July 20, 1981, as follows:
"On July 20, 1981, State Trooper Bruce Vanderhoeven was a Rapides Parish Deputy Sheriff. Sometime in the afternoon of that day, he received a radio call from Deputy Eric Roy Scroggs, shift supervisor. Scroggs informed Vanderhoeven that he had earlier that day received an anonymous telephone call from a woman calling herself `a friend of the Sheriff's Department.' This woman informed him that she knew they had been looking for Wilkinson and that he was in the Coutees' trailer on Wilson Road in the Kolin community. Scroggs gave Vanderhoeven directions to a house on Wilson Road (the residence of Wilkinson's and Rita Coutee's mother), behind which the trailer was situated. Assistant District Attorney Tom Yeager was with Vanderhoeven when Scroggs called. Together they drove out to the Coutee trailer and they were soon joined by Deputy Mike Stevens and Reserve Officer Dana Rachal.
The deputies reached Wilson Road about 5:00 or 5:30 P.M. They checked out the Reeves home and the trailer. No one answered their knocks at the first residence, so they went to the trailer. There was no response there, either to their knocking and announcements that they were law enforcement officers looking for Ronnie Wilkinson. They heard no sound inside but the air conditioning unit was on. A black Mazda pickup determined to be the property of Wilkinson, was parked behind the trailer. The driver's window was rolled down and the keys were in the ignition. Vanderhoeven and Yeager then drove to the home of Carl and Katherine Ducote on Wilson Road, while Rachal and Stevens stayed at the trailer. Although she was relunctant to talk, Mrs. Ducote told Vanderhoeven that she had seen Wilkinson in the area sometime earlier in the day.
The two men then returned to the Coutee trailer and knocked at the door, but received no response. The deputies and Yeager then positioned their two [police vehicle] units near the joinder of Wilson Road and Brandon Road and waited there, out of view of the trailer approximately 15 to 20 minutes, hoping that Wilkinson would think they had gone and attempt to drive away. About this time they stopped two vehicles exiting Wilson Road; one driven by K. Mark Williams and one driven by Kenneth Wilson, step-brother to Rita Coutee and Ronnie Wilkinson, with his girlfriend Darlene Hudgeons as a passenger.
Upon their return to the trailer, the deputies noticed that the keys had been taken out of the ignition in the Mazda and the window had been rolled up and the vehicle locked. However, the trailer air conditioner was still operating. The decision was made that Vanderhoeven *317 and Yeager would return to Alexandria and obtain a search warrant to enter the trailer. Before leaving, they cut the electricity off in the trailer and called Deputy Lachney, assistant shift supervisor, telling him to bring a tear gas canister and the means to fire it over to the Coutee home. Deputy Marvin Paulk, acting shift supervisor that day, arrived at about that time. Paulk drove around while the two went for the search warrant and Stevens and Rachal watched the trailer for any signs of life inside.
Vanderhoeven and Yeager went to the Courthouse to prepare the search warrant. While Yeager was typing it up, Deputy Lachney called to relay a request by Phillip Oestricher, an investigator for the District Attorney's Office, for Vanderhoeven to call him. Contacted by telephone, Oestricher related that he had just received a telephone call from Bobby Michiels, a Reserve Officer in the Pineville Police Department. Michiels had told Oestricher that someone he knew and believed to be trustworthy had told him he had seen Wilkinson inside the Coutee trailer at the window that day with a gun in his hand. This information was not included in the affidavit for the search warrant. From the Courthouse, Vanderhoeven and Yeager went to the home of Judge Alfred Mansour, who signed the warrant. They then returned to the trailer.
At that point, it was close to dusk. Present at the trailer were Deputies Vanderhoeven, Stevens, Paulk and Lachney plus Reserve Officer Rachal and Assistant District Attorney, Tom Yeager. Once again, the deputies knocked on the trailer door, identifying themselves as police officers and telling Wilkinson to come out. There was no response from the trailer. The deputies then made a collective decision to use the teargas brought to the scene by Lachney. Both supervisors present, Paulk and Lachney approved the decision, in accordance with Department policy. Vanderhoeven fired the tear gas canister through the side window of the trailer, and the deputies waited with guns drawn. However, no one came out of the trailer and the deputies did not find Wilkinson when they entered the trailer and searched the rooms.
As a result of the tear gas dispersal in their trailer, plaintiffs allege that the Coutee family was unable to return to their home for 26 days; that all foodstuffs, except for canned goods, were contaminated and had to be thrown out; that they had to hire a janitorial service to clean the carpet, curtains and furniture; and that one child suffered a rash and another spit blood and had a nosebleed. Plaintiffs pray for an award of damages in the total amount of Thirty-Seven Thousand, Four Hundred Seventy-Five Dollars and 82/100 ($37,475.82)."

REASONABLE FORCE PURSUANT TO A SEARCH WARRANT
The plaintiffs failed to raise the legality of the search warrant as an issue contained in the pleadings. The trial court sustained an objection by the defendants when the plaintiffs attempted to introduce evidence concerning the validity of the search warrant.
It is within the discretion of the trial judge to admit or disallow evidence subject to an objection based upon the scope of the issues and pleadings. Mouledous v. Poirier, 221 So.2d 291 (La.App. 4th Cir.1969). It is also discretionary for the trial judge to determine whether evidence is encompassed by the general issues raised in the pleadings. Huhn v. Marshall Exploration, Inc., 337 So.2d 561 (La.App. 2nd Cir.1976), writ denied, 339 So.2d 854 (La.1976).
In the instant case the trial judge found that plaintiffs' failure to specify allegations relative to the search warrant, combined with the failure to amend the petition, necessitated the exclusion of evidence regarding the validity of the search warrant. Roy v. Commercial Union Assurance Company, 385 So.2d 1273 (La.App. 3rd Cir.1980); Marceaux v. Reese, 365 *318 So.2d 504 (La.App. 3rd Cir.1978); Wanda Petroleum Company v. Mac Drilling, Inc., 353 So.2d 474 (La.App. 3rd Cir.1977), writ denied, 355 So.2d 258 (La.1978). The trial court did not abuse its discretion when it excluded the evidence concerning the search warrant for the trailer home.
The issue on appeal focuses on the reasonableness of the entry and search. The trial court recognized the divergent interests of the parties and the need for balancing the individual's rights against the duty of the law enforcement officers.
The trial court found that the deputies, acting pursuant to reasonably trustworthy information, did not use excessive or unreasonable force in executing the search warrant. The trial court relied upon La.C. Cr.P. Art. 164 which provides:
"In order to execute a search warrant a peace officer may use such means for force as are authorized for arrest by
Title V."
Title V, La.C.Cr.P. Art. 220 authorizes a peace officer to "use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance...."
The Louisiana Supreme Court has stated the standard for executing search warrants. The search of a residence must be carried out in such a manner so that due respect is given to the property. In order to determine whether the manner used in executing the search warrant was unreasonable force, it is necessary to examine the totality of the facts and circumstances of each case. State v. Thomas, 329 So.2d 704 (La.1976); State v. Thorson, 302 So.2d 578 (La.1974).
A court must evaluate the officer's actions against those of ordinary, prudent, and reasonable men in the same position as the officers and with the same knowledge as the officers. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977); Picou v. Terrebonne Parish Sheriff's Office, 343 So.2d 306 (La.App. 1st Cir.1977), writ denied, 345 So.2d 506 (La.1977). See Joseph, Tort Liabilities of Law Enforcement Officers: State Remedies, 29 La.L.Rev. 130 (1968).
Use of force to make an arrest is a legitimate police function. However, the use of excessive or unreasonable force renders both the officer and his employer liable for injuries and damages which result. Jones v. City of Lake Charles, 295 So.2d 914 (La.App. 3rd Cir.1974); Taylor v. City of Baton Rouge, 233 So.2d 325 (La.App. 1st Cir.1970); writ denied, 256 La. 253, 236 So.2d 32 (1970).
The trial judge based his decision upon the facts as known to the officers at the time the warrant issued and the search conducted. The trial judge found their actions were supported by the following facts:
"1) Two warrants for Wilkinson's arrest were outstanding at the time on charges of aggravated kidnapping and simple battery; 2) The Sheriff's Department had received a tip that Wilkinson had been seen earlier that day at the home of his sister, Rita Coutee; 3) Upon investigating the tip, deputies discovered Wilkinson's vehicle parked behind the trailer with a window down and the keys in the ignition; 4) The door to the trailer was locked, the air conditioner was running, and no one responded to their knocks and shouts; 5) A neighbor of the Coutee's had said that she had seen Wilkinson in the area of the Reeves' and Coutee's homes that day; 6) From Oestricher, the deputies had received a tip that Wilkinson had been seen inside the trailer with a gun that day; 7) After having been out of direct view of the trailer for about 15 to 20 minutes, the deputies found the keys to Wilkinson's vehicle gone and the window rolled up and vehicle locked when they returned; 8) Wilkinson had a bad reputation and had been the subject of numerous complaints requiring police investigation and judicial action. In addition, he was known to be proficient with firearms."
The Court found that the officers were entitled to weigh their own safety, as *319 well as that of the fugitive and any innocent bystanders when they devised their means of entry to the trailer to execute the search warrant. In the instant case the Court determined that the use of tear gas was both necessary and reasonable considering the totality of the circumstances.
We find no error.

IMPROPER USE OF EVIDENCE
The appellants allege that the Court erroneously took judicial notice of evidence in other proceedings to decide the case at bar.
The appellants contend that the trial judge relied upon evidence which was never introduced into the court proceedings. The incident at issue occurred when the trial judge referred to a past event that the judge himself had been involved in as a deputy sheriff when he attempted to serve civil papers. While it is improper for a trial court to use evidence taken in subsequent judicial proceedings to decide matters, mere reference by the trial judge to a personal experience does not, in our opinion, constitute evidence which would require notice to the parties in order to maintain basic due process. U.S.C. Const. Amendment 14; Lambert v. Lambert, 425 So.2d 270 (La. App. 3rd Cir.1982), writ denied 430 So.2d 84 (La.1983).
Additionally, in his written reasons for judgment, the trial judge explicitly referred to the law and facts presented to the Court. The trial judge continued this reasoning and stated that the result in the case centered on the credibility of the officers and witnesses.
The factual determinations and conclusions of law were supported by the testimony adduced at trial.
We find no error.

VIOLATING SEQUESTRATION
Appellants argue that the trial court's exclusion of witnesses who violated the rule of sequestration was erroneous because the violation was unintentional.
The procedural device of sequestration can be traced to Art. 371 of the 1928 Code of Criminal Procedure. Under that statute a witness who violated the sequestration order still could be called to testify if it were demonstrated that the violation took place without the knowledge and connivance of the party calling him. Hopkins v. Dept. of Highways, 350 So.2d 1271, 1273 (La.App. 3rd Cir.1977); State v. Wheeler, 173 La. 753, 138 So. 656 (1931). The new Code of Criminal Procedure Article 764 grants wide discretionary power to the trial court for modifying the sequestration order.
The same broad discretion for sequestration of witnesses is expressly authorized by La. Code of Civil Procedure Article 1631, as amended in 1966.
La.C.C.P. Art. 1631 provides:
"The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
On its own motion the court may, and on request of a party the court shall, order that the witnesses, other than parties, be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interest of justice, the court may exempt any witness from its order."
The purpose of the rule of sequestration is two-fold. It serves to prevent the witnesses from being influenced by prior testimony and it strengthens the role of cross-examination.
When the rule of sequestration has been violated, it is within the sound discretion of the trial court to disqualify a witness from testifying. Hopkins v. Department of Highways, 350 So.2d 1271 (La. App. 3rd Cir.1977); Aetna Casualty & Surety Co. v. Braud, 327 So.2d 183 (La. App. 4th Cir.1976). This Court explained the intended application of La.C.C.P. Art. 1631:

*320 "Article 1631 of the Code of Civil Procedure does not specify the sanctions available to the court when there has been a violation of the sequestration order. There is a paucity of decisions on the subject and courts seek enlightenment from cases developed in the criminal sphere.

Aetna Casualty and Surety Company v. Braud, 327 So.2d 183, 186 (La.App. 4th Cir.1976). A review of the criminal cases indicates that three sanctions are available. A violating witness, of course, can be placed in contempt. He can also be allowed to testify with the violation going to the credibility of the evidence or can be disqualified altogether. For example, in State v. Badon, 338 So.2d 665 (La.1976), the Supreme Court found no error in allowing a violating witness to testify because the trial judge determined that the testimony was based upon the witness' own memory. In State v. Watson, 305 So.2d 923 (La.1974), the Court approved the trial judge's instructions to the jury to disregard the testimony of witnesses who had violated the rule. In State v. Holmes, 305 So.2d 409 (La.1974), the Court approved the disqualification of a sequestered witness who had remained in the courtroom throughout the trial. In short, the choice of remedy imposed for violation of a sequestration order rests in the sound discretion of the trial judge. See Work of the Louisiana Appellate Courts for the 1974-75 TermCriminal Trial Procedure, 36 La.L.Rev. 605, 621-624 (1976).
Giving wide latitude to the trial judge conforms to our reading of Article 1631 of the Louisiana Code of Civil Procedure. The provision makes no specification regarding the penalties for violation of a sequestration order. In Benoit v. Camelle, 300 So.2d 850 (La.App. 3rd Cir. 1974), writ denied, 304 So.2d 668 (La. 1974), this court approved the disqualification of a witness who had violated the sequestration order. In Aetna Casualty and Surety Company v. Braud, supra, the Fourth Circuit permitted the trial judge to let a violation of the sequestration order go to the weight of the testimony. Finally, Article 225 of the Louisiana Code of Civil Procedure authorizes punishment for contempt when an order of the court is violated. Thus, all three alternatives are available to the trial court when there is a violation."

Hopkins, at 1274.
According to the holding of Hopkins, the trial judge has further discretion to impose sanctions when there has been a deliberate violation of the sequestration order. The trial judge is in the best position to determine whether such violation resulted from an irregularity or ignorance of the sequestration rule, or whether the violation was intentional.
In the instant case, the trial judge stated in his written reasons for judgment that he disregarded certain testimony because of deliberate violations of the sequestration order. He then considered the credibility of all the witnesses who appeared at trial and based his findings of fact and conclusions of law on the testimony rendered. Plaintiffs were allowed to make a proffer of testimony from the disqualified witnesses under La.C.C.P. Art. 1636. La.C.C.P. Art. 1636 provides:
"When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.
If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party to make a record in the same manner of any evidence bearing upon the evidence held inadmissible."
We have reviewed this ruling and find that the disqualification of the witnesses was an appropriate sanction.
"Although disqualification of witnesses may be the most severe penalty, the trial *321 judge was more familiar with the physical surroundings of his courtroom and he was in a better position than us in determining the severity of the violation. We will not substitute our judgment for that of the trial court ....."

Hopkins, at 1275.
We find no error in the actions by the trial court.

FAILURE TO AWARD DAMAGES
The trial court concluded that the deputies acted reasonably according to the information available to them. He determined that the deputies did not exceed the limits of police restraint and therefore no award of damages is due.
The use of force required to make an arrest is a legitimate police function. If the officers used reasonable and necessary force, neither they nor their employer are liable for any injuries which result. See Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs, both at trial and on appeal, are assessed against plaintiffs-appellants.
AFFIRMED.