JiLINDSAY, Judge.
The plaintiffs, Leo Richardson, Jr., and Gertie Richardson, filed suit against Jack Henderson, the mayor of Winnfield, and Cranford Jordan, the Winnfield Chief of Police, individually and in their respective capacities as officials of the City of Winnfield, after their home was damaged during the execution of a search warrant. Following a bench trial, the plaintiffs recovered damages of $2,500.00 per plaintiff, plus $300.00 to clean the residence and $686.28 for doors, locks, paint and labor. The City of Winnfield appealed suspensively. For the reasons assigned below, we amend the judgment of the trial court and, as amended, affirm.
FACTS
The plaintiffs, particularly Mrs. Richardson, were well known in the Winnfield community as bootleggers who sold alcohol from their home without a license. (However, they did have a license to run a cafe on the premises.) On numerous occasions, they were arrested and fined for the illegal sale of alcohol. The police usually went to the Richardson residence to arrest them or telephoned them to come to the police station to surrender to authorities. The couple never resisted arrest.
On September 29,1990, while the plaintiffs were in Houston attending the funeral of Mr. Richardson’s son and grandson, the police, lead by Chief Jordan, executed a search warrant at their home. At the chiefs direction, one of the officers kicked open the kitchen door after no one responded to their knocks. Accompanying the chief into the house were Lieutenant Gleason Nugent and Officer Sonny Roberts of the Winnfield Police Department, and Sergeant Claire “Butch” Chenault of the Office of Alcohol Beverage Control. [2AIS0 accompanying them, at the request of Chief Jordan, was Jimmy Lee Turner, the assistant warden at the Winn Correctional Center. Approximately five officers were *503 stationed outside the residence for “crowd control.” The search lasted from 6:30 p.m. to 9:15 p.m.
Once inside the house, the officers found that the interior doors to the bedrooms of Mr. and Mrs. Richardson were also locked; both of these doors were forcibly opened. During the course of the search, alcohol and money were found throughout the house. Testimony established that most of the searching was conducted by Chief Jordan and Mr. Turner. As items were seized, they were brought to a pool table located near the living room and inventoried. Officer Roberts made a list of the confiscated items with the assistance of Agent Chenault and Lieutenant Nugent.
While searching the bedrooms, drawers were pulled out of cabinets and their contents were scattered across the floor. Photos of the house after the search show empty drawers haphazardly stacked or cast aside. Flour was spilled and eggs were broken on the living room floor. Officer Roberts testified that he heard eggs breaking as the chief declared, “I’ve always wanted to do that.” Lieutenant Nugent testified that the chief made a similar declaration as he threw the contents of a box of candy across the living room. Lieutenant Nugent also saw Chief Jordan knock the contents of the kitchen cabinets onto the counter and the floor. Stools were knocked over and left on the floor.
Eventually, the officers turned their attention to an outdoor storage area and broke down two shed doors. Inside they found a large amount of alcohol jgwhich was also seized. When the officers were leaving at the conclusion of the search, Chief Jordan informed them that he had secured the exterior kitchen door that had been forcibly opened.
At about 7 p.m. that evening, Mrs. Richardson received a telephone call in Houston from a neighbor and was informed about the search. She and her husband returned to Winnfield that night to find the kitchen door open and their home in total disarray. Additionally, they claimed that several items not listed on the search warrant return (including a large amount of cash and a diamond watch) were missing. To document the condition of the house, a videotape and still photographs were made.
The Richardsons filed suit against Mayor Jack Henderson and Chief Jordan, individually and in their respective capacities as officials for the City of Winnfield. Trial in the instant case was held in February, 1992. Prior to the presentation of evidence, the plaintiffs dismissed Mayor Henderson as a defendant.[1]
In December, 1993, the trial court issued a written opinion in which it found that the police used unreasonable force in searching the plaintiffs’ home. While holding that the ■evidence was insufficient to identify the precise individual who damaged the residence, the court found that there was no ^question that representatives of the Winnfield Police were responsible. The court found that the actions of the officers in removing drawers and dumping their contents, breaking eggs on the floor, raking items from shelves, and emptying boxes throughout the house were “clearly unjustified and excessive.”
On the issue of damages, the trial court found that the evidence failed to substantiate certain claims, such as the theft of a large amount of cash. Accordingly, the claims were denied. However, the court awarded $686.28 for the costs of doors, locks, paint and labor, as well as $300.00 for cleaning the residence. Damages of $2,500.00 per plaintiff were awarded for mental anguish.[2]
*504 The City of Winnfield appeals, contending that the trial court erred in finding that the methods used in conducting the search pursuant to the search warrant were clearly unjustified and excessive.
LAW
The statutory law governing the execution of a search warrant is found in LSA-C.Cr.P. Art. 164, which states:
In order to execute a search warrant a peace officer may use such means and force as are authorized for arrest by Title Y.
The relevant provisions of Title V of the Code of Criminal Procedure provide as follows:
|BArt. 220. Submission to arrest; use of force
A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.
Art. 224. Forcible entry in making arrest
In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest.
The law governing the reasonableness of a search was stated in Coutee v. American Druggist Insurance Company of Cincinnati, 453 So.2d 314, 318 (La.App. 3d Cir.), writ denied, 458 So.2d 477 (La.1984):
The Louisiana Supreme Court has stated the standard for executing search warrants. The search of a residence must be carried out in such a manner so that due respect is given to the property. In order to determine whether the manner used in executing the search warrant was unreasonable force, it is necessary to examine the totality of the facts and circumstances of each case. State v. Thomas, 329 So.2d 704 (La.1976); State v. Thorson, 302 So.2d 578 (La.1974).
[Emphasis added.]
A court must evaluate the officer’s actions against those of ordinary, prudent, and reasonable men in the same position as the officers and with the same knowledge as the officers. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977); Picou v. Terrebonne Parish Sheriffs Office, 343 So.2d 306 (La.App. 1st Cir.1977), writ denied, 345 So.2d 506 (La.1977). See Joseph, Tort Liabilities of Law Enforcement Officers: State Remedies, 29 La.L.Rev. 130 (1968).
Use of force to make an arrest is a legitimate police function. However, the use of excessive or unreasonable force renders both the officer and his employer liable for injuries and damages which result. Jones v. City of Lake Charles, 295 So.2d 914 (La.App. 3rd Cir.1974); Taylor v. City of Baton Rouge, 233 So.2d 325 (La.App. 1st Cir.1970); writ denied, 256 La. 255, 236 So.2d 32 (1970).
16There are “longstanding requirements that the officers remain on the premises only so long as is reasonably necessary to conduct the search and that they avoid unnecessary damage to the premises.... ” 2 Wayne R. LaFave, Search and Seizure § 4.10, at 326-327 (2d ed. 1987).
“The destruction of property in carrying out a search is not favored, but it does not necessarily violate the Fourth Amendment; the standard is reasonableness.... ” 2 Wayne R. LaFave, Search and Seizure § 4.10, at 110 (Supp.1995). Destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment. Tarpley v. Greene, 684 F.2d 1, 9 (D.C.Cir.1982).
The general principles concerning the actions of officers in executing a search warrant are stated in 68 Am.Jur.2d Searches and Seizures § 229 (1993):
A valid search warrant does not confer on the executing officer authority to make an unreasonable search; in executing a *505 valid search warrant, the officer must not only be considerate of the comfort and convenience and feelings of the person or occupants of the premises at the time of the search, but must not exceed or abuse the authority with which he is clothed and under which he is acting, and he may not unnecessarily injure the feelings of the defendants or unnecessarily mar the premises searched. The execution of the warrant must be carried out in an orderly manner; if the officer executing the warrant exceeds his authority or wantonly destroys property in making his search, neither the warrant, although valid on its face, nor the good faith of the officer, will protect him from liability. And whenever an officer, in the execution of a formal, legally issued search warrant, exceeds or abuses his authority, and thereby infringes on the constitutional rights guaranteed to the owner or occupant of the premises designated in the search warrant, he and his bondsmen are liable in an action of trespass for the damages to such occupant.
In an action for damages for injury done to property in the course of a search, the question is not whether injury was done to the property by the officers while executing the warrant, but rather, whether the officers executed it in a reasonable and orderly manner. It is the duty of an ^officer in the execution of a search warrant to make a careful and thorough search of the premises, and in so doing, it may be necessary to remove obstructions which would prevent him from making a thorough search, and the removal of such obstructions may result in injury to the property; but the officer cannot be held liable for damages if he acts in a careful and orderly manner and is not guilty of wanton destruction of property.... [Footnotes omitted.]
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. , Rosell, supra.
DISCUSSION
The City contends that the police were entitled to break down all of the locked doors in the plaintiffs’ house while conducting a “sweep” in order to ascertain that no one posing a threat to their safety was concealed in the residence. We agree that the officers were entitled to execute the search warrant without first waiting for the return of the plaintiffs or seeking a key to the residence from one of the plaintiffs’ neighbors Or relatives. We further agree that they were entitled to force open the doors that hindered their execution of the search warrant. Therefore, we set aside and delete that Igportion of the trial court judgment awarding the plaintiffs damages of $686.28 for doors, locks, paint and labor.
The City further argues that, since the search warrant also authorized the officers to search for drugs, they were entitled to search even small places, such as clothing drawers, egg cartons and flour bags, and that requiring them to clean up the clothing, spilt flour and broken eggs would effectively require the police to act as a “maid service” after the execution of a search warrant. With this argument, we cannot agree.
The issue presented in this case is whether the police acted in a reasonable manner and with the proper respect for the home and personal property of the plaintiffs. The evidence in the reeord supports the trial court’s finding that the search was carried out in a manner that was unprofessional, unreasonable and excessive. There was no justification under the search warrant for the officers spilling flour and splattering eggs on the floor of the plaintiffs’ home. The testimony demonstrated that, among other things at least one of the officers indulged in such unreasonable conduct as tossing bags of *506 chips and candy across the living room. Two of the officers involved in the search (whose testimony was obviously accepted by the trial court) acknowledged that such actions were “ridiculous” and unnecessary to the execution of the search warrant.
On the issue of drugs, the search warrant itself allowed the police to seize:
Any and all Alcoholic Beverages located at the residence of Gertie Richardson and any money involved in the sale of alcohol at this residence. And any and all illegal controlled dangerous substances and drugs and drug paraphernalia located in this residence.
19Like the trial court, we note that nothing in the affidavit in support of the search warrant substantiated a claim involving drugs. In fact, Officer Roberts, the affiant who obtained the warrant, testified that his only concern as to drugs pertained to persons (apparently cafe customers) who might be present during the search and drop drugs in their possession at the sight of the police. However, at the time of the search, the plaintiffs were out of town, and the cafe they ran out of their home was closed. No drugs were recovered, and the testimony of Officer Roberts reveals that drugs were not of any serious interest to the officers in their search of the residence of these known bootleggers. Most importantly, even assuming that the officers were in good faith as to their search for drugs, their conduct was still excessive and unreasonable.
The City also argues that the testimony of some of the officers showed that the house was untidy even before they began their search. The City further contends that one of the officers who testified as to the improper manner in which the search was conducted, i.e., Officers Roberts, had severe personal problems with Chief Jordan.[3] However, the trial court, which had the benefit of observing the demeanor of the witnesses as they testified, lipobviously made credibility determinations in favor of the two officers testifying against Chief Jordan. These officers were among the witnesses verifying that the house was in good condition before the search. The trial court’s credibility determinations are entitled to great deference and will not be disturbed on appeal.
The record demonstrates that the residence of the plaintiffs was thoroughly “trashed” by the officers. The bedrooms of the elderly plaintiffs (at trial, Mr. Richardson was 64 years old and his wife was 67 years old) were in such disarray that they were forced to sleep in the living room. It took them almost a month to completely clean up the house. Both testified as to their considerable anguish and distress over the incident; this testimony was corroborated by their neighbors.
Consequently, the portion of the judgment awarding the plaintiffs damages of $300 for cleaning the house and $2,500 per plaintiff for emotional distress is affirmed.
CONCLUSION
The judgment of the trial court is amended to delete the award of $686.28 for doors, locks, paint and labor. In all other respects, the judgment is affirmed. Costs are assessed equally between the parties.
AMENDED AND AFFIRMED.
BROWN, J., dissents with written reasons.

. In their petition, the Richardsons had alleged that Mayor Henderson was present during the search. This assertion led to the related case of Henderson v. Richardson, 26526 (La.App.2d Cir. 1/25/95), 649 So.2d 134, wherein Mayor Henderson sued the Richardsons and their attorney for defamation. Although the mayor recovered damages of $1,000.00 at trial, this court reversed, finding that the mayor, as a public official, had failed to prove by clear and convincing evidence that the statements in the petition were written and published with actual malice.

. In making this award, the trial court found that Mr. Richardson did not establish that this incident caused the health problems he claimed.

. In support of its position, the City cites In re Dismissal of Jordan, 25375 (La.App. 2 Cir. 1/19/94), 631 So.2d 57, in which this court re- . versed Chief Jordan’s dismissal as police chief by the Civil Service Board. That opinion contained a description of the search of the Richardsons’ home which was favorable to the chief. However, since the reversal of the chiefs dismissal was based purely upon procedural grounds (noncompliance with the proper termination procedure), the description of the search was mere dicta and not necessarily based upon the same evidence introduced in the present record.