665 So.2d 1237 (1995)
STATE of Louisiana, Appellee,
v.
Edward W. JOHNSON, Jr., Appellant.
No. 27522-KA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1995.
*1241 Larry Johnson, Joseph M. Clark, Sr., Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Howard M. Fish, Catherine M. Estopinal, Asst. District Attorneys, Shreveport, for Appellee.
Before MARVIN and STEWART, JJ., and CLARK, J. Pro Tem.
STEWART, Judge.
This appeal arises out of the First Judicial District Court, Parish of Caddo, Honorable Judge Eugene W. Bryson, Jr. presiding. A jury convicted the defendant of the first degree murder of Shreveport police officer Ron Dean. The jury sentenced the defendant to life imprisonment. The defendant appeals his conviction asserting nine assignments of error. We affirm.

Facts
On December 15, 1992, Officer Willie Shaw of the Shreveport Police Department supervised a controlled buy of crack cocaine from Edward W. Johnson, Jr., the defendant. Officer Shaw searched Tyrone Hunter, a confidential informant, wired him with a listening device and provided him with $50 in previously photocopied money. Officer Shaw then transported Hunter to the defendant's apartment located at 8052 Line Avenue, The Pines Apartments, Apartment 252.
Officer Shaw observed Hunter approach apartment 252 and knock on the door. Officer Shaw then stepped back to his car to avoid being seen. A few minutes later, Hunter returned to the car where Officer Shaw was waiting and handed him .9 grams of suspected crack cocaine. Officer Shaw searched Hunter again and conducted a field test of the substance. It tested positive for cocaine.
Officers William James Nelson and Alan D. Johnson followed Officer Shaw and Hunter to the apartment complex. They conducted surveillance of the listening device on Hunter. Officers Nelson and Johnson were unable to see the apartment from where they were parked. The listening device malfunctioned once Hunter entered the apartment and the officers were unable to hear anything. Officer Nelson witnessed Officer Shaw search Hunter before and after the buy. He testified that Hunter did not have any drugs, weapons, or money on him.
The next day, December 16, 1992, Officer Shaw prepared an affidavit testifying to the facts of the controlled drug buy and the district court issued a search warrant for apartment 252.
On the evening of December 16, 1992, the Street Level Interdiction Unit of the Shreveport Police Department set out to execute several search warrants for controlled dangerous substances. The unit that evening consisted of Officers Shaw, Nelson, Johnson, Ron Dean, Jimmy Peck, Mike Campbell, and A.J. Price. The officers were dressed in black with black tee shirts with "POLICE" in white letters written across the front and back. At least one officer had on a jacket *1242 which partially covered these letters. Some of the members of the unit wore black hoods which covered the whole head except for the eyes. The unit planned to make a "dynamic entry" into the homes of suspected drug dealers to prevent the suspects from disposing of the drugs and/or arming themselves. Prior to executing the search warrant at the defendant's apartment, the unit conducted a search warrant on Dallas Street. Drugs and weapons were found during this search warrant.
The entry team consisted of Officers Dean, Peck, Johnson, Shaw and Campbell, in that order. Officer Dean's job as the first man on the entry team was to breach the doorway with a battering ram. Officer Nelson was assigned to secure the van and to guard the front perimeter. Officer Price was assigned to the rear perimeter to ensure that no one attempted to escape or discard any evidence from the rear windows.
At 11:00 p.m., Officer Nelson drove the officers to The Pines apartment in the assault van. Officer Nelson pulled the van behind the defendant's car and the unit proceeded to the defendant's apartment in a stealth-like manner. Once the entry team reached the second floor apartment, Officer Dean hit the door with the battering ram. Simultaneously or after the first strike at the door, the officers began to announce their presence by yelling "Police, Search Warrant." Officers Price and Nelson, the rear and front security men, both testified that they heard one hit to the door then heard the officers announce their presence. Officer Dean hit the door again with the battering ram while the other officers continuously announced their presence. Officer Johnson testified that Officer Dean advised them that he was having trouble breaching the door. Officer Dean then dropped the battering ram and began to kick the door. Officer Peck, the second man on the entry team, testified that Officer Dean kicked the door twice then ran full bodied into the door and the door burst open. Officers Shaw, Campbell and Johnson testified that they heard the first shot from the apartment as the door opened.
When the door opened, Officer Dean, followed closely by Officer Peck, entered the apartment in a crouched position. Officer Dean went to the right to apprehend a suspect, later identified as Christopher Johnson, who was sitting on the couch. Officer Peck was following Officer Dean when he heard the first shot coming from the hallway of the apartment. Officer Peck started across the room to the dining/kitchen area for cover. As he was proceeding across the room, Officer Peck fired one shot from his MP-5, 9 millimeter submachine gun. Officer Peck fell to the floor as he heard another shot and saw muzzle flashes from the hallway. At this point Officer Peck realized that he had been hit in the leg. Officer Johnson entered the room and went left towards Officer Peck. Officer Johnson fired his gun, a Glock 9 millimeter semi-automatic pistol, towards the hallway approximately 5 or 6 times until his gun jammed. Officer Peck was able to sit up at this time and he reached around the wall and fired the MP-5 several times with one hand down the hallway. Officer Peck then blacked out.
Officer Campbell, the fourth man on the entry team, fired his weapon, a .40 caliber Glock pistol, from the doorway of the apartment. Officer Campbell testified that he thought that he fired his weapon at the same time Officer Peck was firing. When the firing stopped, Officer Campbell entered the apartment and turned on a flashlight. Prior to this, the room was dark and lit only by the outside light and the light from the television. Officer Campbell approached the defendant in the hallway and ordered him to show his hands. The defendant was laying in the hallway as he had been hit two or three times by the officers.
Officer Shaw also entered the apartment at this time and handcuffed the defendant. Officer Shaw seized the defendant's weapon, a silver Taurus .357 magnum revolver which was lying at the defendant's feet. The events described above took approximately 45 to 60 seconds from the time Officer Dean first hit the door until the firing stopped.
Officers Nelson and Price entered the apartment. The officers removed Christopher Johnson, and a black female carrying a baby, identified as Tammy Ealy, the defendant's girlfriend. The officers searched the *1243 apartment and found two children, identified as the defendant's and Ealy's children, in their bedroom.
Officers Dean and Peck and the defendant were brought to LSU-MC. Officer Dean was hit twice and was dead upon arrival at the hospital. One bullet was found lodged in the back of his bullet proof vest. The fatal shot hit Dean in the front portion of his left armpit, between the two sections of his vest. The bullet was recovered in Dean's lower lobe of his right lung. Officer Peck was hit in the left leg. The defendant was struck two or three times. One bullet was removed from his foot. The defendant was released from the hospital the following day.
At the hospital the defendant gave two statements, one of which was recorded and played for the jury. The defendant also gave a recorded statement the day after the shooting which was also played for the jury. The defendant stated that he, Tammy Ealy, and Christopher Johnson (his brother) were watching television on the night of December 16, 1992. His three children were in the bedrooms sleeping. The defendant stated that he heard someone kicking at his front door. He and Ealy got up from the couch and ran to the back room. Ealy got the baby who was sleeping on the bed and the defendant retrieved his gun from the top drawer of his dresser. The defendant then stepped into the hallway and fired one warning shot above the door. The door burst open and he shot three more times before he heard someone yell "Police." At that time he dropped his gun and fell to the floor. The defendant stated that he never heard the officers announce their presence before the door opened and that he thought the officers were burglars.
The homicide investigation unit and the narcotics unit searched the apartment after the shooting. A drug dog was brought in and he found two rocks of cocaine in a vent in the bathroom. The dog also alerted to a spot where some marijuana had been retrieved from the floor of the living room. Several articles of clothing were recovered from the apartment and brought back to the police station for identification and further searching. Officer William Day of the forensic unit seized a pair of green jeans found on the floor of the living room. The next day Officer Day searched the jeans and found cash and a medicine bottle in the pocket of the jeans. The defendant's name was on the medicine bottle and five rocks of crack cocaine were in the medicine bottle. Officer Keith Fox of the narcotics division compared the money found in the pockets of the jeans to the photocopies of the money used in the controlled drug buy the previous night. The serial numbers on one of the twenty dollar bills matched.
Richard Beighley, a criminalist with the North Louisiana Crime Lab, was qualified as an expert in firearms identification and tool mark identification. He examined the officer's weapons, the defendant's weapon, and the guns seized from the search warrant executed on Dallas Street the night of the homicide. He also examined the bullets found in Dean's vest and body.
Beighley testified that the bullet found in Dean's body was a blue Nyclad bullet. These types of bullets are covered with a blue nylon coating over the tip of the bullet to reduce the lead emitted when the bullet is fired. The one remaining bullet found in the defendant's Taurus was a Federal Nyclad bullet. The spent cartridges found in the Taurus were all manufactured by Federal Ammunition Company which makes the blue Nyclad bullets. Although the bullet from Dean's body was too damaged and had insufficient individual markings to make a positive identification, Beighley testified that the bullet had similar class characteristics as the reference bullet fired from the defendant's Taurus.
The bullet found in the back panel of Dean's vest was a lead bullet. Beighley testified that the bullet found in Dean's vest was fired from the defendant's .357 magnum Taurus.
Beighley also testified that none of the officer's weapons nor any of the weapons seized from the Dallas Street search warrant could have fired the bullets found in Officer Dean's vest or body. In addition, all the spent cartridges found at the scene were matched to either Peck's MP-5 submachine *1244 gun, Campbell's .40 caliber Glock pistol, or Johnson's 9 millimeter Glock pistol. Finally, the four spent cartridges found in the defendant's Taurus were definitely fired from the Taurus.

Discussion
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La. 1992). Thus, the following discussion of defendant's assignments will be treated in the logical, as opposed to their numerical, order.
Assignments of Error Nos. 6, 7 and 8: The verdict was not in conformity with or supported by the evidence and the trial court erred in denying the defendant's motion for a new trial and his motion for a post-judgment modification of the verdict.
The defendant combined these assignments of error as they all contend that the evidence was insufficient to support the verdict. The defendant asserts that the state failed to prove that the defendant had the specific intent to kill.
The parties stipulated that Officer Dean was a commissioned police officer at the time of the offense. It is clear that Officer Dean was in the course and scope of his duties at the time of the offense. Accordingly, the defendant's main argument on appeal is that he did not know that the men were police officers and thus he did not have the specific intent to kill a police officer. The defendant contends that he made a reasonable mistake of fact in that he thought the police were burglars and that he was acting in self-defense and in the defense of his family.
Under Jackson v. Virginia, supra., the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992); LSA-C.Cr.P. Art. 821.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra., and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
In relevant part, first degree murder is defined as the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties or when the offender has a specific intent to kill or inflict great bodily injury upon more than one person. LSA-R.S. 14:30(A)(2) and (3). Reasonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for crime. LSA-R.S. 14:16. A homicide is justifiable as self-defense only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. LSA-R.S. 14:20(1); State v. Cotton, 25,940 (La.App. 2d Cir. 3/30/94), 634 So.2d 937. The state had the affirmative duty to prove that the defendant was not acting in self-defense. On appeal, the relevant inquiry is whether any rational trier of fact could have found beyond reasonable doubt that the homicide was not committed in self-defense after viewing the evidence in the light most favorable to the prosecution. Cotton, supra.
*1245 Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La. 2/11/94), 634 So.2d 371. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. State v. Lindsey, 543 So.2d 886 (La. 1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993); LSA-R.S. 14:10(1).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Butler, 322 So.2d 189 (La.1975); State v. Brown, 618 So.2d 629 (La.App. 2d Cir.1993), writ denied, 624 So.2d 1222 (La.1993). In reviewing the correctness of such a determination, the Court should review the evidence in the light most favorable to the prosecution and must determine whether the evidence is sufficient to convince a reasonable trier of fact of defendant's guilt beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra.; State v. Brown, supra.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. See State v. Maxey, 527 So.2d 551 (La.App. 3d Cir.1988), writ denied, 541 So.2d 868. The jury could reasonably conclude that the defendant intended to kill Officer Dean and Officer Peck when he aimed and fired upon them as they entered the door. Thus, the question is whether the defendant reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself from danger. The answer to this question hinges on whether the defendant knew that the men were police officers engaged in their lawful duties.
All the officers on the entry team testified that they were announcing their presence by hollering "Police, search warrant" before they entered the apartment. Officer Nelson was near the van in the parking lot when he first heard the officers announce their presence. Officer Price was in the rear of the building and he was able to hear the officers state "Police, search warrant." The defendant, in his taped statement, stated that he did not hear anyone say "Police" until after he had fired his weapon four times. Christopher Johnson and Tammy Ealy also testified that they did not hear the officers yell "police" before the door broke in. The defendant fired the first shot after Officers Dean and Peck had entered the room. All the officers had on black tee shirts with the word "POLICE" in large white letters written across the front.
The jury chose to believe that the defendant knew that the officers were police and was not acting in self-defense. If the officers working the rear and front perimeter were able to hear the officers shouting "Police, search warrant," then it is reasonable to believe that the occupants of the apartment also heard the officers. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded that the defendant had the specific intent to kill or inflict great bodily injury upon a police officer.
In the alternative, the jury could have determined that the defendant had the specific intent to kill or inflict great bodily harm upon more than one person; i.e. Officers Peck and Dean. As stated above, the officers testified that the defendant did not fire the first shot until at least the first two officers were entering the apartment. Officer Peck testified that he and Officer Dean were in the apartment, heading towards the couch when he heard the first shot. Viewing this evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded that the defendant had the specific intent to kill or inflict great bodily injury upon more than one person.
During the course of the trial, the defense attorney alluded to the possibility that one of the officers had fired the shot which killed Officer Dean with either his own weapons or with one of the weapons seized at the search warrant on Dallas Street. However, the *1246 weapons expert's testimony refuted this theory. Beighley testified that none of the officers weapons nor any of the weapons seized on Dallas Street could have fired the bullet which killed Officer Dean.
This assignment of error is without merit.
Assignment of Error No. 1: The trial court erred in denying the defendant's motion to suppress the search warrant and all evidence seized pursuant thereto.
In this assignment of error, the defendant asserts that the affidavit upon which the search warrant was issued contained false and misleading information and did not contain sufficient reliable information upon which the magistrate could make an independent decision. The defendant also argues that the affidavit did not state any reasons to justify the execution of the search warrant at night in violation of LSA-C.Cr.P. Art. 163. The defendant further asserts that the officers' "no-knock" forced entry was unreasonable.
A hearing on the motion to suppress the search warrant was held in June, July, August and September of 1994. The trial court issued a written decision on September 30, 1994 denying defendant's motion to suppress. The trial court found "no intentional misrepresentations or omissions by Officer Shaw (the affiant) in his affidavit so as to quash the search warrant. Further, any apparent inconsistencies with his testimony and the affidavit are at best minor and are not of such a character to vitiate the probable cause." As for the execution of the search warrant, the trial court found that the officers acted reasonably while executing the warrant in a manner necessary to successfully seize the contraband and to protect themselves and that no reasons need be given to justify the execution of a search warrant at night.
Probable cause exists when the facts and circumstances within the affiant's knowledge and of which he has reasonable trustworthy information are sufficient to support a reasonable belief that an offense has been committed or that evidence or contraband may be found at the place to be searched. State v. Johnson, 408 So.2d 1280 (La.1982); State v. McLemore, 26,106 (La. App. 2d Cir. 6/24/94), 640 So.2d 847, writ denied, 94-1908 (La. 12/9/94), 647 So.2d 1107. An issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, there is a "fair probability" that evidence of a crime will be found in a particular place. The task of the reviewing court is simply to insure that the magistrate had a "substantial basis" for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 239-41, 103 S.Ct. 2317, 2322-23, 76 L.Ed.2d 527 (1983); State v. Byrd, 568 So.2d 554 (La. 1990); McLemore, supra. Probable cause for the issuance of a search warrant does not involve certainties of proof beyond a reasonable doubt, or even a prima facia showing, but rather involves probabilities of human behavior as understood by persons trained in law enforcement and based on the totalities of the circumstances. State v. Rodrigue, 437 So.2d 830 (La.1983).
Making material and intentional misrepresentations to a magistrate constitutes a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. Byrd, supra.; State v. Williams, 448 So.2d 659, 663 (La.1984), McLemore, supra. A defendant bears the burden of going forward on an allegation that an application for a search warrant contains intentional misrepresentations such as would make it invalid. State v. Hudgins 519 So.2d 400 (La.App. 2d Cir. 1988), writ denied, 521 So.2d 1143 (La.1988). If the misrepresentations or omissions are inadvertent or negligent, the warrant will be retested for probable cause after striking the misrepresentations or supplying the omissions. Byrd, supra., McLemore, supra. In the instant case, the defendant contends that even if the misrepresentations are found to be inadvertent or negligent, when these misrepresentations are stricken, the affidavit does not support the issuance of the search warrant.
Officer Shaw executed the affidavit submitted to support the search warrant. Honorable Judge Eugene W. Bryson Jr. signed the search warrant on December 16, 1992. The pertinent part of the affidavit is as follows.

*1247 The Affiant is an experienced officer with the Shreveport Police Department currently assigned to the Narcotics Street Level Interdiction Unit.
On 12-15-92 the Affiant met with a person hereafter called CI # 487 who is a reliable confidential informant who has worked with the Shreveport Police Department in the past in which Controlled Dangerous Substances (i.e. marijuana and cocaine) have been purchased in S.P.D. controlled buys resulting in successful search warrants where Controlled Dangerous Substances have been recovered and arrests made.
The Affiant searched CI 487 for contraband, illegal narcotics, and monies, but none were found. The Affiant then gave CI 487 previously photocopied funds from the S.P.D. Narcotics Bureau for the proposed purchase of illegal narcotics. CI 487 also wore an electronic transmitter for safety reasons which was monitored by Cpl. W.J. Nelson and Off. A.D. Johnson while the Affiant maintained a visual watch of CI 487.
CI 487 was then taken to 8040 Line Avenue, Shreveport, Caddo Parish, Louisiana, which is the Pines Apartment Complex and was seen entering Apartment # 252 located on the second floor of Building # 8052 at this location. Once inside this apartment dwelling, CI 487 met with an unknown B/M and purchased .9 grams of suspected crack cocaine. During this purchase, CI 487 saw additional quantities of suspected crack cocaine within the interior of this apartment. Once the transaction was completed, CI 487 exited the apartment and was met by the Affiant who seized the purchased cocaine, marked same, and later placed it into evidence for transfer to the crime lab for analysis. The Affiant again searched CI 487 for contraband, illegal narcotics, and monies, but none were found in this post-buy search. A field test of the purchased cocaine by the Affiant proved positive for Sch. II cocaine. (State Exhibit MTS # 1).
The defendant argues that there are material misrepresentations contained in the affidavit such that all the evidence seized pursuant to the search warrant must be suppressed. More specifically, the defendant asserts the following:
1) the affidavit failed to set forth specific information about the amount of experience the affiant had;
2) the affidavit failed to set forth sufficient specific information concerning the confidential informant's (CI) credibility;
3) the affiant made misleading statements when he stated that the CI had been searched before and after the controlled drug buy;
4) the affiant made a misleading statement when he stated that the CI wore an electronic transmitter during the controlled buy which was monitored by Officers Nelson and Johnson; and,
5) the affiant made a misleading statement when he stated that he witnessed the CI enter the defendant's apartment.
Lack of specific information concerning Officer Shaw's experience.
The affidavit states that the "(a)ffiant is an experienced officer with the Shreveport Police Department currently assigned to the Narcotics Street Level Interdiction Unit." This statement is sufficient to establish the experience of the affiant. Furthermore, the affiant's experience is not relevant if the material facts stated in the affidavit are true and are sufficient to supply the issuing magistrate with probable cause to issue the warrant.
Lack of specific information concerning the CI's reliability.
The defendant argues that the affiant did not provided the magistrate with enough information upon which to make an independent determination of the CI's reliability. The defendant also complains of the fact that the affiant did not mention in the affidavit that the CI was being paid for the information he supplied and that he was to receive a reduction in the charges pending against him in exchange for his help.
The affidavit stated that the informant had worked for the Shreveport Police Department in controlled drug buys which resulted in successful search warrants and *1248 arrests. Recitations in an affidavit that the informant has previously given information leading to arrest are generally adequate to support the informant's reliability. State v. Matthews, 552 So.2d 590, 598 (La.App. 2d Cir.1989), writ denied, 559 So.2d 137 (La. 1990); State v. Stephenson, 387 So.2d 1111 (La.1980). The statement in the affidavit is adequate to support the CI's reliability.
Furthermore, more important than the CI's past success rate or the amount of compensation received by the CI is the fact that the CI made a successful purchase of cocaine from the defendant's apartment under the supervision of Officer Shaw. The affidavit stated that the CI was searched before being transported to the defendant's apartment. No illegal drugs, money or weapons were found during this search. Officer Shaw gave the CI previously photocopied money. The affiant observed the CI approach the apartment. A few minutes later the CI returned to Officer Shaw who was waiting in his car and handed him .9 grams of suspected crack cocaine. Once again Officer Shaw searched the CI and found no money, weapons or illegal drugs. The CI told Officer Shaw that he had seen additional quantities of cocaine in the defendant's apartment. The affiant performed a field test on the substance and determined that the substance was cocaine. The search warrant was not dependent upon the CI's past reliability. Rather, the search warrant was based primarily on the controlled drug buy which was set up and observed by the affiant. See State v. Grey, 408 So.2d 1239 (La.1982).
The defendant also argues that the affiant failed to state that there were several unsuccessful attempts to purchase cocaine from the defendant's residence prior to the successful December 15, 1992 purchase. We consider one controlled buy of illegal drugs supervised by an officer is sufficient probable cause to secure a search warrant. See State v. Gant, 93-2895 (La. 5/20/94), 637 So.2d 396, rehearing denied, 93-2895 (La. 7/1/94), 639 So.2d 1183, which found that the controlled buy of a small amount of cocaine by a reliable confidential informant gave the police probable cause to secure a search warrant.
This argument is without merit.
Misstatements made by the affiant concerning the controlled drug buy.
The defendant argues that the affiant was less than truthful when he described the circumstance surrounding the controlled buy on December 15, 1992. The defendant alleges that the affiant did not specify that the search of the CI before and after the purchase was only a "pat down" and not a complete strip search. The defendant alleges that the CI could have hidden the crack cocaine. The evidence does not support this allegation.
Officer Shaw testified at the hearing on the motion to suppress that prior to transporting the CI to the defendant's apartment he searched the CI for money, illegal drugs and weapons. Officer Shaw admitted that this search was not a strip search, rather it was only a pat down. Officer Shaw testified that he did not take the CI's shoes off during the search. The CI testified that Officer Shaw patted him down, turned his pockets inside out, took his shoes off and patted down his socks. Absent a full body cavity search, this search was sufficient to determine if the CI had drugs, weapons or money. Furthermore, the CI testified at the hearing that he purchased the cocaine from the defendant in his apartment.
The defendant also argues that Officer Shaw omitted the fact that the officers were unable to hear the CI make the purchase over the electronic transmitting device the CI was wearing. The officers who monitored the electronic transmitter admitted that the transmitter failed to pick up the conversation between the CI and the defendant. However, the affidavit does not state that any conversation was heard. It only states that the CI wore an electronic transmitter for safety reasons. This is not a misstatement of the facts.
Finally, the defendant argues that the affiant misrepresented the facts to the magistrate when he stated in the affidavit that he saw the CI entering the defendant's apartment. At the hearing on the motion to suppress, Officer Shaw stated that he did not actually see the CI enter the apartment. *1249 Rather, he observed the CI climb the stairs and stand by the door of the defendant's apartment. At that time Officer Shaw stepped back to his car to avoid detection.
The statement that Officer Shaw witnessed the CI enter the apartment was inadvertent or negligent. The officer witnessed the CI climb the stairs, approach the door, and stand by it. The CI was sent specifically to the defendant's apartment to purchase cocaine. The logical assumption is that the CI did enter the apartment. Furthermore, the fact that the CI entered the apartment is not false. The only misstatement was that the officer did not personally observe the CI enter the apartment.
If the statement is deemed inadvertent or negligent, it should be stricken from the affidavit and the affidavit retested to determine if there is still probable cause to issue the warrant. Byrd, supra.; McLemore, supra. When the statement "was seen entering apartment" is removed from the affidavit, there remains sufficient information to establish probable cause. Without the statement, the affidavit still gives enough information about the successful purchase of cocaine from the defendant's apartment and that the informant saw additional cocaine in the apartment. As stated above, one successful purchase of cocaine supervised by an officer is sufficient to secure a search warrant. See Gant, supra.
This argument is without merit.
Execution of the search warrantSpecific reasons to support a night time search.
The search warrant in this case specifically provided that the officers were empowered to execute the search during the night or on Sunday. However, the affidavit did not state any reasons for the necessity of the executing the search warrant at night. The search warrant was executed at approximately 11:05 p.m.
The defendant argues that the second paragraph of LSA-C.Cr.P. Art. 163 requires some showing of need to execute a search warrant at night or on Sunday.
LSA-C.Cr.P. Art. 163 states as follows:
A search warrant shall be directed to any peace officer, who shall execute it and bring any property seized into the court issuing the warrant.
A search or seizure shall not be made during the nighttime or on Sunday, unless the warrant expressly so directs.
A search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance.
The plain language of this statute does not require a specific showing of necessity of a nighttime search. It only requires a specific authorization of a nighttime search. Furthermore, the defendant has ignored the more specific provisions concerning search warrants involving controlled dangerous substances found in the Uniform Controlled Dangerous Substances Law. LSA-R.S. 40:985 provides as follows:
A search warrant relating to offenses involving controlled dangerous substances may be authorized to be served at any time of the day or night if the judge or magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant. (emphasis added).
The issuing judge or magistrate need only find probable cause for the warrant. See Gooding v. United States, 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974).
In Gooding, the United States Supreme Court interpreted 21 U.S.C. Sec. 879(a), the federal counterpart to LSA-R.S. 40:985, to require no special showing for a nighttime search, other than a showing that the contraband is likely to be on the property or person to be searched at that time. Gooding, supra. at 456-58, 94 S.Ct. at 1794. LSA-R.S. 40:985 tracks the language of Section 879(a) except that the federal statute requires a showing that "grounds exist for the warrant and for its service at such time." Our statute does not contain the italicize language. Even with this additional phrase, the Supreme Court found that this statute does not require a showing of specific need for a nighttime search. See also State v. Boudreaux, 304 So.2d 343, nt. 5 (La.1974).
As stated above, there was sufficient probable cause for the issuance of this warrant. Accordingly, there is no need for the affiant *1250 to state a necessity for executing the search warrant at night. Since this warrant did specifically provide that the search warrant could be executed during the night or on Sunday, there was no error in executing the search warrant at night.
Execution of the search warrantThe "noknock" entry was unreasonable.
The defendant argues that the method of executing the search warrant by breaking into the defendant's home without knocking and allowing him the opportunity to respond violates the provisions of LSA-C.Cr.P. Arts. 220 and 224. Article 220 states as follows:
A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.
Article 224 states as follows:
In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, moveable or immoveable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest.
These articles apply to the execution of search warrants as well as to the execution of arrest warrants. LSA-C.Cr.P. Art. 164.
All the circumstances must be examined to determine if the force used in the execution of the warrant was reasonable. State v. Thorson, 302 So.2d 578 (La.1974). In Thorson, the supreme court found that the officer's "no-knock" entry into the defendant's residence was reasonable in that the officer had a reasonable belief that the defendant would be armed and that the evidence sought, illegal drugs, could be disposed of easily. The court found that these circumstances might have imperiled the arrest if the entry had not been unannounced and forcible. Thorson, supra., citing Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).
The present case is similar to Thorson, supra. The officers had probable cause to believe that illegal drugs, specifically crack cocaine which is generally small enough to be disposed of quickly, were present in the defendant's residence. Officer Shaw also testified that he had information from another confidential informant that the defendant was violent and known to carry guns.
These circumstances justify the "no-knock" entry used by the officers. If the officers had announced their presence and allowed the defendant an opportunity to respond, the defendant would have had the opportunity to dispose of the illegal drugs found in the apartment. In fact, because of the delayed entry in this case, the defendant was able to arm himself which resulted in the death of one officer and the injury of another.
This assignment of error is without merit.

Assignment of Error No. 2: The trial court erred in allowing the weapons seized at an unrelated search warrant to be introduced into evidence.
During the state's case-in-chief, the trial court admitted into evidence four weapons seized at a previous search warrant conducted on Dallas Street by the officers. The defendant made a timely objection to the introduction of these weapons. The defendant argued that the weapons were not relevant and were offered only to inflame the jury. The defendant also objected to one of the weapons in particular because the serial number on the weapon did not match the serial number on the search warrant return. However, the defendant has not urged this argument on appeal.
Relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. C.E. Art. 402. The trial court is vested with wide discretion in determining relevancy of evidence and its ruling will not be disturbed on appeal in absence of clear showing of *1251 abuse of discretion. State v. Butler, 25,563 (La.App. 2d Cir. 1/19/94), 631 So.2d 22.
Throughout the trial, the defendant attempted to create doubt in the minds of the jury by suggesting that one of the officers fired the shot that killed Officer Dean. The weapons seized at the Dallas Street search warrant were introduced to prove that the bullet which killed Officer Dean could not have come from one of these weapons. These weapons were relevant and the trial court did not abuse its discretion in admitting them into evidence.
This assignment of error is without merit.

Assignment of Error No. 3: The trial court erred in allowing the testimony of Tyrone Hunter to be read into evidence.
Tyrone Hunter, the confidential informant, testified at a preliminary hearing concerning the controlled drug buy of rock cocaine from the defendant upon which Officer Shaw's affidavit for the search warrant was based. The defendant argues that the state failed to show due diligence in attempting to obtain the physical presence of Hunter at trial, thus the trial court erred in allowing his previous testimony to be read to the jury. The defendant contends that Hunter's testimony at the preliminary hearing was inconsistent and unreliable.
La.C.E. Art. 804(B)(1) permits the introduction of testimony of an unavailable witness given at a prior proceeding if the opposing party had the opportunity to cross-examine the witness. Before testimony given at a prior proceeding may be introduced at trial, certain conditions must be met to avoid offending the confrontation and cross-examination clauses of the federal and state constitutions. State v. Robinson, 423 So.2d 1053, (La.1982); State v. Sylvester, 343 So.2d 1020 (La.1977). The supreme court has stated the conditions as follows:
1) defendant must have been represented by counsel at the earlier hearing; 2) the witness testified under oath; 3) the witness was cross-examined or else there was a valid waiver of the right to cross-examination; 4) at the time of the trial, the witness (whether out of state or not) is unavailable or unable to testify; and 5) the state had made a good faith diligent effort to obtain the presence of the witness, including by its out-of-state subpoena powers where appropriate. Robinson, supra. citing State v. Hills, 379 So.2d 740 (La.1980).
In this case, the first three conditions are not contested. Hunter did testify at a prior hearing on the defendant's motion to suppress. The defendant was represented by counsel and the witness was subject to extensive cross-examination. However, the defendant contends that the state did not satisfy the last two conditions in that it did not make a diligent effort in locating Hunter.
Before Hunter's testimony was read to the jury, the trial court held a hearing out of the presence of the jury to determine whether the state made reasonable efforts to obtain the witness' presence. The state produced three witnesses who attempted to contact Hunter. Eddie Swift, an investigator for the district attorney's office, testified that on September 15, 1994 he personally served Hunter with a subpoena to appear in court for the trial. When Hunter did not appear for trial, Swift called his last known residence, visited that residence and left several messages on Hunter's pager.
Ricky Johnson of the Caddo Parish Sheriff's office testified that he received a warrant to pick up Hunter during the course of the trial. Johnson attempted to execute the warrant at Hunter's last known address on Fairfield Avenue in Shreveport. Johnson spoke with Hunter's girlfriend, Jackie Miles, and she informed him that Hunter had not been there for two weeks. She told Johnson that Hunter may be in Coushatta living with his father. Johnson contacted the Sheriff's office in Coushatta but that office did not respond. Johnson also checked at Hunter's sister's address and found the home to be vacant. Johnson drove around the Cedar Grove neighborhood on two occasions searching for Hunter and asking various people if they had seen Hunter. He was unsuccessful.
Don Ashley, an investigator for the district attorney, also testified that he made several attempts to locate Hunter during the course of the trial. Ashley went to Hunter's last known address on Fairfield, attempted to get *1252 an address for Hunter's sister through the city records, and paged Hunter several times. He was also unsuccessful. The trial court ruled that the state proved that the witness' whereabouts were unknown at the time and that the state had made "a good faith, diligent effort" to obtain Hunter's presence.
The lengths to which the state must go to try to produce a witness is a question of reasonableness. Robinson, supra. We find that the state made a good faith, diligent effort to obtain the witness' presence and that the trial court did not err in ruling that Hunter's testimony could be read to the jury. This assignment is without merit.

Assignments of Error Nos. 4 and 5: The trial court erred in overruling the defendant's objection to the state's improper and misleading rebuttal arguments and the trial court erred in refusing to admonish the jury or grant a mistrial.
By these assignments of error, the defendant asserts that the prosecutor made "vicious personal attacks" on defense counsel for the sole purpose of inflaming the jury. The defendant also complains of the prosecutor's comments concerning the "war on drugs" and the jury's part in helping win this "war on drugs."
The defendant objected only once during the prosecutor's rebuttal argument. At that time, he stated that he objected to the prosecutor's inaccurate, misstatement of what was said during defendant's closing arguments. The alleged misstatement concerned the legal issue of whether "no-knock" searches are illegal. The defendant did not object to the statements he complains of on appeal. Furthermore, the defendant did not ask for a mistrial or an admonishment to the jury. An error cannot be complained of after the verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. Art. 841; State v. Hayes, 585 So.2d 619 (La.App. 2d Cir.1991).
This assignment of error is meritless.

Assignment of Error No. 9: Errors patent.
We have reviewed the record for errors patent and have found none.

Conclusion
For the foregoing reasons, we hold that the conviction was based on competent evidence and is not tainted by manifest error. The conviction and sentence are affirmed.
AFFIRMED.