302 So.2d 578 (1974)
STATE of Louisiana
v.
Richard THORSON.
No. 54986.
Supreme Court of Louisiana.
October 28, 1974.
*580 Frank J. Uddo, Uddo & Gertler, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendant Richard Thorson was charged by bill of information with possession of LSD with intent to distribute, in violation of La.R.S. 40:966. The bill merely states that the defendant did "wilfully and unlawfully" possess LSD with intent to distribute it, whereas the statute proscribes the knowing and intentional possession; however, under this Court's holding in State v. Scott, 278 So.2d 121 (La.1973) the information is sufficient.[1] (Emphasis here and elsewhere supplied). The defendant was convicted by a jury and sentenced to nine years' imprisonment at hard labor and a fine of $1,000.00. He appeals to this Court, relying upon twenty bills of exceptions. Those bills pertaining to the same subject matter will be considered together.

BILLS OF EXCEPTIONS NOS. 4, 5, 6, 7, 11 and 13
These bills all relate to the issue of the extent to which information regarding a confidential informant may or should be divulged. The facts underlying the bills are these: on June 29, 1973, Officer Richard Marino[2] of the New Orleans Police Department obtained a warrant to search the premises occupied by the defendant at 8610 Bill Street, New Orleans, in order to seize marijuana, LSD, heroin, barbiturates, amphetamines, hallucinogenics, cocaine, narcotic pharaphernalia, and firearms. The affidavit supporting the warrant stated that Thorson's residence had been searched pursuant to a warrant approximately eight months earlier, in November of 1972, and at that time police seized a large amount of marijuana, LSD, barbiturates, hashish and firearms. Since November of 1972, the police had received information that Thorson had continued distributing narcotics from his residence, that a reliable informant had bought narcotics from him there, and that on June 29, 1973, the same informant had been inside and had seen a large quantity of marijuana and LSD. That same day, Officers Imbornone and Viller stated that they had seen several people enter and leave the residence; and two other officers, Marino and David, saw a man enter, stay a few minutes, and leave with a small package. Later that same day, the informant told Officer Marino that he had just bought some marijuana there.
That evening, Marino and six or seven other officers searched the residence pursuant to a warrant and found a large quantity of marijuana and LSD, narcotic paraphernalia, and firearms. At this time the defendant was arrested and charged. Before the trial began the defendant filed a motion to suppress the search warrant and the evidence found pursuant to it. The motion was denied after a hearing. The bills considered here were reserved during the trial when the court refused to permit defense counsel in the presence of *581 the jury to obtain certain information about the informant.[3]
The record shows that the defense attorney received answers, without any objections, to the following questions: whether the informant was receiving any payment, monetarily or otherwise, in return for the information he supplied; whether the informant was a narcotics addict; whether the informant had any charges pending against him in state or federal court at the time he supplied the information; whether the informant had any motive in helping the police; whether the officer personally knew the informant; and whether the informant was on the payroll of the City of New Orleans. The questions objected to by the State, which were not allowed, sought to ascertain: whether the informant was under any state or federal charges at the time of defendant's trial; how the informant supplied himself with narcotics; whether the informant was promised help relative to any case pending against him in return for information given; who was the last person arrested as a result of information obtained from this particular informant; where the informant basically worked and where he phoned from; whether the informant was a member of the Police Department; whether the informant was a member or an employee of an investigative agency; whether the informant was a narcotics user (already answered affirmatively without objection); what the informant's employment or occupation was; whether or not the informant had a "habit"; and again, whether the informant was a narcotics user.
We hold that the trial judge did not commit reversible error in disallowing the questions. The questions asked and the information solicited appear to have been an attempt to ascertain the identity of the informant. This was the opinion of the trial judge, as expressed in his per curiam, and defense counsel admitted that it was his motive in oral argument before this Court. However, the defense counsel never presented the issue of whether or not he was entitled to know the informant's identity to the trial judge; he merely contended that his questions should be allowed so that he could probe the motive of the informant, and thereby establish that his client had been "framed". Since the trial judge never had the opportunity to rule on whether or not the defendant was entitled to ascertain the informant's identity, we do not review that issue. The questions that were allowed were sufficient inquiry into the informant's motive. Those that were not allowed were either repetitious or tended to reveal the informant's identity, which would have resulted in a subversion of the informant's privilege. See, e. g., McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Freeman, 245 La. 665, 160 So.2d 571 (1964). The test articulated *582 in those cases is that the informant's identity will not be revealed unless it is essential to adequately prepare the defense. As discussed above, defense counsel did not even allege that he needed to know the identity.
Additionally, it appears from the testimony in the record that the person the defendant suspected as the informant, and thus the person whom he thought had framed him, was a Charles Russo. All the policemen who had had any contact with the informant were questioned as to whether the informant was indeed Charles Russo, and also as to whether they even knew an individual by that name. All responded in the negative.
We hold that these bills are without merit.

BILLS OF EXCEPTIONS NOS. 8, 12 and 18
These three bills pertain to alleged violations of La.C.Cr.P. Arts. 770 and 771 which prohibit prejudicial statements and grant the defendant a right to a mistrial or admonition therefor. Bill Number 8 was reserved in reference to Officer Marino's testimony regarding his surveillance of defendant's residence, during which he mentions a previous arrest warrant.[4] This information was volunteered by the witness, not solicited by the State. He was narrating the events which led to the search. He did not state that the defendant had committed another crime, nor even that defendant had previously been arrested, but only that there had been a dispute over a prior arrest warrant. Following the dictates of La.C.Cr.P. Art. 771, the court admonished the jury. We hold that if any prejudice was suffered by the defendant as a result of the statement, it was cured by the judge's admonition to the jury. A mistrial was not mandated, particularly since the testimony was unsolicited and unresponsive. See, e. g., State v. Howard, 283 So.2d 197 (La.1973); State v. Boudoin, 257 La. 583, 243 So.2d 265 (1971); State v. Callihan, 257 La. 298, 242 So.2d 521 (1970).
Bill Number 12 was reserved to testimony of Officer David which referred to an ongoing investigation of the 7th District area in regard to narcotics activities since around November of 1972. Defense counsel neglected to move either for a mistrial or a jury admonition when the testimony was elicited. The mere perfection of a bill of exceptions does not render applicable La.C.Cr.P. Arts. 770 and 771; a motion from defense counsel was required.
The only testimony attached to Bill Number 18 for our review is the following:
"Q Was your husband arrested that day [November 24, 1972]?
"A No sir."
Since Mrs. Thorson replied that her husband had not been arrested at that time, the colloquy cannot be said to be prejudicial.
We hold that these three bills present no issues of reversible error.

BILLS OF EXCEPTIONS NOS. 2 and 14
These two bills object to the admission into evidence of marijuana found in defendant's possession at the time of his arrest, on the ground that defendant was *583 charged with the possession with intent to distribute of only LSD; the charge did not include possession of marijuana. Part of the evidence seized was a bottle with a capacity for approximately a hundred or two hundred tabs of LSD, which contained between eighteen and twenty-seven tabs at the time of the search. One of the experts testified that that amount of LSD, approximately $36.00 worth, was of a sufficient quantity to be normally kept by a person in the business of distributing it because it was probably too much for any single person to consume, even over a long period of time. The defendant was also found to possess in excess of two pounds of marijuana, only a small portion of which was manicured, a process usually performed by a distributor of marijuana. The moderately large amount of LSD possessed by defendant, augmented by the very large quantity of marijuana he also possessed, tended to prove his intent to distribute materials designated as controlled dangerous substances under La.R.S. 40:961 et seq., including LSD.
We hold that under the particular facts of this case, the probative value of the evidence of possession of a large quantity of marijuana is of a sufficient quality that prejudice which might flow from the mention of the possession of the marijuana, another offense, is outweighed thereby and suppression of the marijuana was not required. Therefore these bills are without merit.

BILLS OF EXCEPTIONS NOS. 9 and 10
Defense counsel reserved these bills when the trial judge permitted the State to produce evidence concerning a statement which the defendant made to Officer David, one of the arresting officers, to the effect that another individual present in the Thorson residence at the time of the arrests, a Mr. Jerry Bergeron, knew nothing of the narcotics in the house and had only come to collect money Thorson had borrowed from him to buy suntan lotion.
The record reveals that the defendant had been advised of his Miranda rights immediately upon his arrest, although this was done two to three hours before he gave his statement to the policeman. The policeman who gave him his Miranda warning did not interrogate him as to his understanding of it, but there is no indication that he did not understand, nor is there any allegation to that effect by his attorney. Defense counsel argues that the undue delay of approximately three hours between the time defendant was arrested and the time he made the statement, at which time he had not yet been booked because they were still at his home, constituted psychological coercion of the defendant by the police. There is no indication in the record that defendant was subjected to any form of psychological coercion. Two or three hours was not an unreasonably long delay under the circumstances, since the necessity of prying loose some molding and floorboards in the kitchen where drugs were concealed indicated the need for a very thorough search; and at one point when explosives were discovered, it was necessary to have a special force search carefully for bombs and other explosive materials in order that the police might safely continue their search. As to physical coercion, there had been a scuffle between the defendant and the police earlier when he had resisted their attempts to bring him into the kitchen, after which he was handcuffed and kept sitting on the kitchen floor. However, the statement was volunteered a considerable amount of time after this scuffle had ended, and there is no indication whatever that the two were related; in fact, there is testimony to the contrary. We agree with the judge's finding that the statements were freely and voluntarily made. In fact, the statements were spontaneous utterances by defendant and *584 were not obtained under interrogation. They were admissible into evidence.
These bills present no reversible errors.

BILLS OF EXCEPTIONS NOS. 3 and 20
Bill Number 3 was reserved when the trial court ruled that Mr. Alan Sison, a chemist with the New Orleans Police crime laboratory, was qualified to give an expert opinion in chemical analysis and identification of narcotic drugs. Bill Number 20 was reserved to a question asked by the State of Officer Ben, who had been qualified as an expert by the court in the identification of narcotics, their use, their street value, etc. The particular question was whether a bag containing manicured marijuana could be put under pressure and not break up. The objection was that the witness had not been qualified in the composition of marijuana or the compression of it.
The record supports the acceptance of Mr. Sison as an expert witness. He was a chemist and had been with the New Orleans Police Department for four years in that capacity; he had been qualified as an expert in all sections of Orleans Criminal District Court on approximately 45-50 occasions and had never failed to so qualify. He had a B.S. degree in Biology and Chemistry and also had attended several seminars sponsored by the Louisiana Association for Forensic Science. See State v. Corbin, 285 So.2d 234 (La. 1973); State v. Vassel, 285 So.2d 221 (La. 1973), wherein similar qualifications were adjudged sufficient for an expert witness.
As for Officer Ben, the record establishes that he was qualified as an expert in the activities of narcotics users, the toxicology, identification and chemical composition of drugs, and the street values of drugs. The trial judge was of the opinion that the question was within the officer's expertise and that he was qualified to answer it. Under La.R.S. 15:466, the test of an expert's competency is his knowledge about his subject, which must be established to the satisfaction of the court. The jurisprudence is clear that a trial judge has wide discretion in this area, and his decision will not be disturbed absent manifest error. See, e. g., State v. Richmond, 278 So.2d 17 (La.1973).
We hold that these bills of exceptions are without merit.

BILLS OF EXCEPTIONS NOS. 16 and 17
These two bills complain that the chain of possession of the narcotics evidence was incomplete because Mr. Waguespack of the Crime Laboratory who received the evidence from Officer Venezia was not called as a State's witness. Officer Venezia had collected the evidence from the officers who had seized it at approximately 11:00 p. m. on the night of June 29, 1973, which was the night Thorson had been arrested. Venezia ran a field test on the material, and then he dated and initialed the evidence, all of which was already dated and initialled by the officers who had seized it. It was then placed in a sealed box which could only be opened by someone in the Crime Laboratory, and it remained locked up and in Venezia's possession until he turned it over to Waguespack on July 2, 1973. Waguespack delivered it to Sison, who testified to that effect.
We hold that the chain was sufficiently established by the testimony of Venezia and Sison, and that the testimony of Waguespack was not necessary. The evidence was sufficiently connected to the crime and to the accused.

BILL OF EXCEPTIONS NO. 1
This bill was reserved to the overruling of the motion to suppress the search *585 warrant, on the ground that the police officers who executed it had forced their entrance into defendant's home. Defendant alleges that the force was not necessary and that it was used to coerce and intimidate him into making statements and/or confessions. He alleges that the legitimacy of the warrant was negated by the abuse of it by the policemen who executed it. The trial judge issued an excellent per curiam opinion to these allegations, and we hold that his reasons for denying the motion to suppress were valid and reasonable.
Article 164 of the Code of Criminal Procedure warrants the use of such force as is authorized for arrests in La.C.Cr.P. Art. 220 in the execution of a search warrant by a policeman. The jurisprudence is settled that the totality of the circumstances must be examined to determine if the force used was unreasonable. The testimony of Officer Marino indicates that in executing the warrant, he knocked twice on the door of defendant's residence and identified himself and the other officers as policemen. He heard noises within and received no response; thereupon they forced their entrance. Because narcotics can be so quickly and easily destroyed as evidence, circumstances such as these involving a warrant to search for narcotics particularly justify quick action by the police in obtaining entrance to a place they are authorized to search if their repeated knocks result in no responses. This bill is without merit.
We note that the trial judge sentenced the defendant on the same day that his motion for a new trial was denied, in contravention of the requirement in La.C.Cr.P. Art. 873 that a twenty-four hour delay must elapse between the denial of the motion for new trial and the imposition of sentence. Therefore, we affirm the conviction, but remand to the trial court for proper sentencing in accordance with the law.
SANDERS, C. J., concurs in decree.
NOTES
[1] The writer does not concur in the majority's disposition of this issue. See State v. Scott, 278 So.2d 121, 128-130 (La.1973) (dissenting opinion).
[2] This police officer's name appears as "Marino" in the search warrant, and as "Moreno" at some points in the trial transcript.
[3] The motion to suppress was premised entirely upon the issue of whether or not the police officers had used undue force in executing the search warrant, thereby rendering it invalid. See discussion of Bill of Exceptions No. 1, infra. The search warrant was issued on the basis of an affidavit which relied on information supplied by a confidential informant. Defense counsel sought to attack the reliability of the informant during the trial, which amounts to an attack on the affidavit, and consequently, on the probable cause for issuance of the search warrant. However, he did not allege or argue this in the motion or the hearing on the motion, as mandated by La.C.Cr.P. Art. 703, but rather introduced the argument for the first time during the trial in the presence of the jury. Article 703 provides the proper vehicle for the argument defense counsel sought to make in this instance; even though the trial had begun, the judge was vested with discretion by the article to grant a hearing on a motion to suppress if it had been moved for by the defendant. To allow a circumvention of the clear procedure set out in Article 703 such as was attempted by defense counsel in this case would have disrupted the orderly procedure of the trial, and it would have resulted in presentation before the jury of evidence which the legislature in enacting Article 703 clearly intended to be heard out of the jury's presence.
[4] The testimony was as follows:

". . .we felt we had been observed on our surveillance so we drove past the residence, stopped our car to attempt to make conversation as though riding in the area rather than blow our surveillance. The subject became beligerant [sic] with us and was cursing us about a previous arrest warrant and we decided to leave the scene."