JjPER CURIAM.
The issue in this appeal is whether deputies of the St. Bernard Parish Sheriffs Office, possessing a valid search warrant, used excessive force while executing the search of the plaintiffs residence. For the reasons discussed below, we affirm.
STATEMENT OF FACTS
On or before September 20, 1984, plaintiff-appellants, Kevin Harris, Sr., Anita Harris, his wife, and two minor children, Kevin Harris, Jr. and April Harris, rented and occupied 3101 Daniel Dr., Violet, Louisiana. Their home is a “T” shaped duplex with the Harrises occupying the back apartment. The front door of the apartment is located toward the rear of the building, along the side of a driveway.
On September 20, 1994, Agent Eric Levis of the St. Bernard Parish Sheriffs Office received information from a confidential informant (Cl) that an individual named David Johnson (whose nickname was “Lil Poochie”) was selling crack cocaine at the residence located at 3101 Daniel Drive in Violet, Louisiana. Agent Levis formulated a plan with Agent Michael Minton for the Cl to go to the address to purchase cocaine. The agents searched the Cl for money or contraband and then [2handed him currency to purchase crack cocaine from David Johnson. The suspect was a known drug dealer who had been arrested in July of 1994 and had given his address as 3101 Daniel Drive in Violet. The informant knocked on the door at 3101 Daniel Dr., a black male opened the back door down the driveway and a brief conversation ensued. The black male closed the door and opened it a short time later when an exchange took place. The Cl left the residence and Levis conducted a preliminary field test on the rock like substance, which tested positive for cocaine.
Based on the above events and prior history of the suspected drug dealer, David Johnson, officers applied for a search warrant, which was signed by the District Judge on September 22, 1994. Counsel for appellants, at oral argument, *1148 contended that the search warrant was improvidently issued. Although that issue was not raised at the trial or appellate level, we have reviewed the application and find that it was properly applied for and issued. There is no contradictory evidence in this record to refute the facts that a drug transaction at 3101 Daniel St. occurred on September 20, 1994, and the David Johnson gave that address on a prior arrest.
On September 22, 1994, after securing the search warrant the officer set up another buy using the CL Agents Levis and Minton met with the Cl, searched him for money and contraband and gave him $20 to purchase crack cocaine. The Cl proceeded to 3101 Daniel where David Johnson was standing outside. They spoke, the Cl went around the corner and then the Cl handed the suspect $20 in return for a rock like substance, which tested positive for cocaine.
The agents knocked on the door at 3101 Daniel Drive, announced they were with the Sheriffs Office and had a search warrant. Hearing no response, they heard a noise inside the house, and fearing destruction of evidence, the agents | forced entry into the residence with a battering ram and their weapons drawn for personal safety purposes. Inside the residence, the agents encountered a black male and a female adult in one bedroom and a black male and female juvenile in another bedroom. They ordered Mr. Harris to kneel and handcuffed him, while one officer pointed a gun at her head. Once the officers realized they were not in danger they holstered their weapons. The officers immediately brought all of the people into the living room at which time the search warrant was presented to Mr. and Mrs. Harris. The officers then began a search of the residence. No narcotics were found in the Harris home. The officers eventually departed, leaving clothing scattered on the floor and the personal belongings of the occupants disordered.
Mr. and Mrs. Harris, their son, Kevin Harris, Jr. and their landlords, Mr. and Mrs. Phoenix, were the only people who had keys to the apartment. At the time of the search Anita Harris admitted knowing of a David Johnson but said he did not live within the apartment. The Harrises later discovered that David Johnson’s aunt lived next door to them. Anita Harris did not know whether or not somebody had gotten into her house or utilized her house when she was not there.
Prior to this incident, Anita Harris was under the care of Ochsner Clinic Psychiatrist, Dr. Olmstead, for emotional issues, which included trust of her husband. Dr. Olmstead testified that this incident exacerbated Mrs. Harris’ previous problems. Dr. Olmstead further testified that both Mr. and Mrs. Harris sustained additional emotional stress and strain, necessitating specific care as a result of the incident itself, and that the condition was ongoing and that she did not know when it would end. Mr. Harris was also seen by Dr. Olmstead for problems arising out of this incident. Mrs. Harris took both of her children to Methodist ^hospital the day after the incident as she said they were scared and having trouble sleeping.
ASSIGNMENT OF ERROR
Appellants alleged that the defendants used excessive force when executing the search warrant and caused them severe emotional distress. The plaintiff claims that the trial judge committed reversible error when he found no liability on the part of the defendant, which was contrary to the law and the evidence in the instant case. The plaintiffs claim that the deputies used a battering ram without giving the plaintiffs a chance to open the door, and then forced open the door, with guns *1149 drawn, screaming “Police”. The Harris children and Mr. Harris testified that the deputies pointed their weapons at the their heads. The deputies admit that they entered the residence with their guns in their hands for self protection, believing that a drug dealer was inside. Harris cites Coutee v. American Druggist Ins. Co. of Cincinnati, 453 So.2d 314 (La.App. 3d Cir.1984), writ denied, 458 So.2d 477 (La.1984), which held that when determining if the manner used in executing a search warrant was reasonable, a court must evaluate the police officer’s actions against those of an ordinary, prudent, and reasonable man in the same position and with the same knowledge as the officer. In the instant case, the agents knew the suspect to be a drug dealer and a convicted felon who had been arrested numerous times for felonies in the past. Thus they acted appropriately under the circumstances of this case when they entered and searched the premises.
This Court has held that it is unreasonable for a police officer to use a battering ram to execute a search warrant where there is no indication that anyone was in a position to spot the officers and warn any occupants of the officers’ approach. State v. Thompson, 97-0368, (La.App. 4 Cir.1997), 693 So.2d 282. However, in the instant case, the warrant was executed between 9:30 p.m. and 9:45 p.m. and it was not readily apparent to the officers who was inside or what danger existed therein. Thus, they were justified in using a battering ram when no one responded to their knocking. The Louisiana Supreme Court held that, “a peace officer who executes a search warrant may use such means and force as is authorized for an arrest.” La. Code Crim.P. art. 164. As provided in La.C.C.P. art. 224, the provision which governs forcible entry when making an arrest, the requirement for knock-and-announce in Louisiana is enunciated as follows:
In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest.”
State v. Miskell, 98-2146, p. 4 (La.10/19/99), 748 So.2d 409, 412. The court also noted that a reviewing court should “take care both to review findings of historical fact only for clear error and to give due weight to inferences draw from those facts by resident judges and local law enforcement officers.” Id. at 414.
In a case similar to the instant case, the Supreme Court evaluated whether the actions of the officers constituted excessive force. See State v. Thorson, 302 So.2d 578, 585 (La.1974). In Thorson Officer Marino testified that in executing the warrant, he knocked twice on the door of defendant’s residence and identified himself and the other officers as policemen. The officer heard noises within and received no response, so he and the other officers forced their entrance. The Supreme Court stated that “the jurisprudence is settled that the totality of the circumstances must be examined to determine if the force used was unreasonable.” State v. Thorson, 302 So.2d at 585. The court held that “because narcotics can be so quickly and easily destroyed as evidence, circumstances such as these involving a warrant to search for narcotics particularly justify quick action by the police in obtaining entrance to a place they are *1150 authorized to search if their repeated knocks result in no responses.” Id.
The Trial Judge determined that the police officers used reasonable force using the battering ram when they did not receive any response from knocking on the door. Further the Court determined that the search of the premises was not unreasonable because of the undisputed evidence of a drug transaction at that location. We agree that “considerable” force was used, which caused the Harris family serious emotional distress, but cannot conclude that the trial court was manifestly erroneous
Accordingly, the judgment is affirmed.
AFFIRMED.