800 So.2d 819 (2001)
STATE of Louisiana
v.
James WILLIAMS.
No. 2001-KK-0732.
Supreme Court of Louisiana.
November 28, 2001.
*820 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Jeffrey M. Burg, Lake Charles, Counsel for Applicant.
Charles G. Wainwright, New Orleans, Counsel for Respondent.
TRAYLOR, J.[*]
Defendant James Williams, Jr., was arrested after the police forced entry into his residence and seized crack cocaine pursuant to a valid search warrant. The trial court suppressed the evidence finding the police did not wait an appropriate amount of time before making a forceful entry after knocking and announcing their intent to execute the warrant. The court of appeal affirmed, denying the state's writ application. We granted the state's writ to review the trial court judgment and determine whether the police must wait a minimum amount of time for admittance after announcing their presence and before conducting a forceful entry to execute a warrant to search.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On Monday, June 19, 2000, New Orleans Police Narcotics Squad Detective Ceasar Ruffin received information from a confidential informant that James Williams was distributing narcotics from a residence and vehicle located at 3611 Kent Drive in New Orleans, Louisiana. On that date, Detective Ruffin, in plain clothes and an unmarked car, observed a moderate amount of traffic in and around the residence, including what appeared to be several hand-to-hand drug transactions. The informant advised Detective Ruffin that the activity at the residence was constant. The informant made a controlled purchase of crack cocaine from defendant at the residence, under Detective Ruffin's supervision.
On July 20, 2000, the informant made a second controlled purchase of crack cocaine from the defendant. This time, however, the defendant retrieved the contraband *821 from a brown, two-door Buick parked near the residence. Based upon the information provided by the informant, the two controlled purchases, and the detective's observation of the residence, Detective Ruffin secured a warrant to search the vehicle and residence.
The next day, July 21, 2000, in executing the warrant, Detective Caesar Ruffin appeared at the residence at 4:30 a.m. with approximately twelve other officers, knocked on the front door, while he and other officers yelled, "Police. Search warrant; Police. Search warrant...." It is uncontroverted that the officers forced entry into the residence by means of a battering ram after seeing lights on and figures running within. Upon entry, the officers secured and searched the residence.
Pursuant to the search, the police found seven large rocks of crack cocaine, several smaller fragments, two weapons, and a large amount of cash. Defendant was arrested and later indicted by a grand jury for one count of aggravated assault,[1] in violation of La.Rev.Stat. 14:37.2, and one count of possession of cocaine with intent to distribute, in violation of La.Rev.Stat. 40:967. After the arrest, the police took all occupants of the residence to the police station to record their statements.
According to the statement taken from defendant's mother (Mrs. Williams), she and her husband (Mr. Williams) were awake at approximately 4:00 a.m., as was usual in their household, because Mr. Williams was preparing for work. The two of them had gotten out of bed and Mr. Williams preceded her out of their bedroom which was located at the farthest corner of the house from the street. Mrs. Williams was in an interior hallway of the house, separated from the front room by a closed door. Mr. Williams was brushing his teeth in the bathroom. She stated that she heard some noise and thought her younger son and grandson, who shared the front bedroom, were watching television or playing a game. She looked in on the boys and closed the door. She then followed the noise, opening the hallway door to the dining room and heard noise at the front door. She asked her husband what the noise was and they walked to the front area of the house. She estimated that ten or fifteen seconds had elapsed from the time she first heard the noise until the police forced the door open.
Mr. Williams stated that he was in the bathroom brushing his teeth when his wife heard the commotion. At this point, she yelled, "What is that?" to her husband. He heard the noise for the first time after he had left the bathroom and entered the front areas of the house. He also stated that he and his wife were standing in the dining room when they heard noises at the door which sounded like gunshots, the door flew open, and the police entered, ordering them to the floor. He estimated that "maybe approximately" three seconds elapsed from the time he first heard the noise until the police defeated the door.
The defendant filed a pretrial motion to suppress the evidence seized pursuant to the warrant. At the hearing on the motion, the testimony established that the Williamses did not hear the police knock and announce and that the loud noises they heard at the front door were caused by the police battering ram. Detective Anthony Pardo testified that Detective Caesar Ruffin knocked continuously for several seconds on the door and announced *822 their intention to execute the warrant several times. Detective Pardo opined that the occupants had plenty of time to come to answer the door but did not. Shortly thereafter, the officers saw subjects starting to run back and forth inside the house and believed the occupants were destroying drug evidence. Upon seeing this, the commanding officer, Seargent Hines ordered a forced entry.
At the hearing on the motion to suppress, the defendant testified and presented the testimony of several of defendant's family members and his girlfriend who were present during the execution of the search warrant. These witnesses testified that the police did not announce their presence before gaining entrance into the residence. All of the family members were in the rear portion of the house.
At the hearing on the motion to suppress, Mr. Williams slightly changed his testimony from what he had told the police, stating that he was in the bathroom brushing his teeth when he first heard noises, he went to the dining room, and it took. "[m]aybe about three seconds" from the time he took his place in the dining room until the door was defeated by the police.
The prosecution presented the testimony of Detective Pardo, who insisted that his fellow officer had knocked loudly and announced that police were about to execute a search warrant. He testified as follows:
A. Caesar Ruffin knocked on door, at which time we all ... were actually yelling, `Police. Search warrant; Police. Search warrant....'
Q. How many times did Detective Ruffin knock on the door?
A. He continuously knocked for several seconds. I'm not exactly sure how long it was, he knocked long enough to where someone could answer the door.... He knocked abruptly and made a big loud, loud noise....
Q. Now, after you said Detective Ruffin had knocked several times, did you get any response from this house?
A. Shortly after he had knocked, we began yelling, `Police. Search warrant.' We did see subjects starting to run through the inside of the residence. We could see through the shades in the window, figures going back and forth.... [A]fter seeing people run back and forth, plenty of time for them to come to the door. No one came to the door, and they continued to run back and forth, at which time we received an order to make a forced entry.
After hearing all of the testimony, the trial judge suppressed the evidence, ruling:
In reference to the knock and announce, and more particularly forceful entry that took place on this date at the home of Mr. Williams, the Court believes that they, based upon the law, the Court must ascertain the sufficiency of the time that elapsed between knocking and announcing and then entering the home.
Now, the date in question, it appears as though this entry took place between 4, 4:30, 5, 5:30 a.m. in the morning. The testimony was only slightly different among the police officers, but it seems to bare [sic] out that it was a knock, not more than two and an entry.

The Court believes at 4 o'clock in the morning that individuals need a little bit more time to get to the door. You're in your bed at 4 o'clock in the morning you would certainly need a sufficient amount of time to get to the door.
The court did [not] hear testimony that the officers observed, nor did they articulate any activity that would have supported them being afraid that any *823 contraband was being destroyed. To simply say we didn't wait any longer for fear the contraband was being destroyed in a summary conclusion, that was not supported by any articular [sic] or articulated facts from any of the officers testified.
According to this, the Court believes and feels that the entry was illegal [sic] gained and, therefore, anything seized as a result of that entry pursuant to the Court, the evidence is suppressed. (Emphasis added)
The court of appeal, relying on a trial court's minute entry of February 9, 2001, which erroneously stated, "Court held that the police officers had failed to properly announce their entry, and accordingly the entry violated the defendant's rights," determined that the trial judge found the police did not knock and announce. Upon this erroneous minute entry, the court of appeal concluded that the trial judge found incredible the testimony of the officer, instead believing the lay witnesses. State v. Williams, 01-K-0503 (La.App. 4 Cir. 3/16/01).
We granted the state's writ to address whether the police waited an appropriate amount of time under the circumstances of this case after knocking on defendant's door and announcing their presence before using force to enter the residence to execute the warrant to search for narcotics.

LAW AND REASONING
This court has never considered the amount of time police must wait for admittance after announcing their presence before conducting a forceful intrusion but has considered similar issues surrounding the propriety of dynamic entries in the absence of announcement. State v. Thomas, 329 So.2d 704 (La.1976). In State v. Thorson, 302 So.2d 578 (La.1974), this court upheld the validity of a search conducted pursuant to a warrant to search for narcotics against the defendants' allegations that the search was invalid because force was not necessary. In Thorson, the testimony indicated that police knocked twice, identified themselves as policemen, heard noises within the residence, received no response, and forced entry. This court held that "[b]ecause narcotics can be so quickly and easily destroyed as evidence, circumstances such as these involving a warrant to search for narcotics particularly justify quick action by the police in obtaining entrance to a place they are authorized to search if their repeated knocks result in no responses." Id. at 585; see also Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995) (Risk of destruction of "easily disposable narcotics evidence" could provide justification for even an unannounced entry). We note that the police knocked twice in Thorson and this court was satisfied that the entry was reasonable under the circumstances. This court addressed the reasonableness of the entry without touching on the amount of time which elapsed from the announcement to the entry. Because such a discussion is relevant to the case at hand, we turn to a discussion of the reasonableness of entry based upon timing of the entry.
The court of appeal's reliance on the erroneous minute entry instead of the reasons for judgment prevented it from addressing the true issue: whether the police must wait a minimum amount of time for admittance after announcing their presence and before conducting a forceful entry to execute a warrant to search. Although the trial judge suppressed the evidence, the ruling explicitly states that it was not the police's failure to knock and announce, as was erroneously indicated in the minute entry, which was considered improper, but, rather, the fact that the officers did not wait an appropriate *824 amount of time to allow the occupants time to respond at the early morning hour. Because the trial court found specifically that the police knocked and announced before entry, we pretermit any discussion thereof and turn instead to a discussion the reasonableness of the timing of the police entry.
To evaluate the reasonableness of the instant entry we must proceed within the framework of our statutes. Of utmost importance in this matter are La.Code Crim. Proc. arts. 164 and 224, which respectively provide:
In order to execute a search warrant a peace officer may use such means and force as are authorized for arrest by Title V. La.Code Crim. Proc. art. 164
In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest. La.Code Crim. Proc. art. 224
With that foundation, and because the issue herein is res nova in Louisiana, we now look to federal jurisprudence and case law from other states for guidance.
The knock-and-announce requirement is grounded in the Fourth Amendment and serves several purposes: 1) it decreases the potential for violence; 2) it protects the privacy of the individual by minimizing the chance of forcible entry into the dwelling of the wrong person; and 3) it prevents the physical destruction of property by giving the occupant time to admit the officers voluntarily. United States v. Ruminer, 786 F.2d 381, 383 (10th Cir.1986) (citations omitted). Thus, the basic purpose of the knock-and-announce requirement is to give notice to the occupant of a premises which is the subject of a search warrant so as to avoid a forcible entry by law enforcement officers.
The notion that the knock-and-announce principle is part of the reasonableness inquiry is a relatively well accepted part of Fourth Amendment jurisprudence. However, not until United States v. Jones, 133 F.3d 358 (5th Cir.1998), had any federal court specifically addressed how long state officers must wait before entering a residence after knocking and announcing their presence.[2]
*825 The federal equivalent of La.Code Crim. Proc. art. 224, 18 U.S.C. § 3109,[3] has been construed as a limitation on, rather than an extension of, the authority of federal officers to use force in the execution of a warrant. United States v. Salter, 815 F.2d 1150, 1152 (7th Cir.1987). Read with this judicial gloss, § 3109, like La.Code Crim. Proc. art. 224, prohibits federal officers when executing search warrants from entering a dwelling until they have announced their authority and purpose and have been refused admittance absent exigent circumstances. Id. Similarly, § 3109 does not specify how long law enforcement officers must wait before they are constructively denied admittance and are entitled to enter the premises forcibly. The time that § 3109 requires officers to wait before they may construe no response as a denial of admittance depends largely on the circumstances of each case. See United States v. McConney, 728 F.2d 1195, 1206 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); United States v. Davis, 617 F.2d 677, 695 (D.C.Cir.1979), cert. denied, 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980).
Additionally, the timing question is relevant in § 3109 cases only to the extent necessary to imply refusal of admittance by the occupant, but these cases are of little value in determining how long state officers must wait before forcing entry under the Fourth Amendment reasonableness standard. United States v. Jones, 133 F.3d 358 (5th Cir.1998). It is possible that a delay in a particular case might be too short to imply refusal of admittance under § 3109, but be reasonable for Fourth Amendment purposes because of other exigent circumstances such as the potential for destruction of evidence or danger to law enforcement officers or innocent occupants. Id. In the instant case, our Statutes provide that officers knock-and-announce unless exigent circumstances warrant otherwise. Our Statutes combine and balance the Fourth Amendment rights of individuals with the police interests.
In the instant case, the record reveals that, by and large, the factual findings of the trial court are correct. The court held that the police did in fact knock-and-announce their presence before forcefully entering the home. Although none of the officers testified that they suspected defendant was armed and dangerous, they did witness persons running within the residence apparently in a panic over the police presence. However, the court deviated from a reasonable reading of the evidence in reasoning, "at 4 o'clock in the morning that individuals need a bit more time to get to the door. You're in bed at 4 o'clock in the morning you would certainly need a sufficient amount of time to get to the door." While it is certainly true of most households, the facts in evidence *826 were that four of the six occupants of the home were awake at this early hour of the day and were not asleep in bed as the trial judge reasoned. The police could see individuals running around in the home and, therefore, knew they were not all asleep and did not they require extra time to get to the door.[4]
However, the trial court erred in finding no testimony that the officers observed any activity which would lead them to believe contraband was being destroyed. The facts elicited reveal quite the contrary. Mr. and Mrs. Williams were awake and about the house, had the lights turned on, they were well within reach of the front door and within view of the police a good portion of the time the police were attempting to execute the warrant. From the police officers' perspective, these facts in themselves were enough to satisfy a reasonable suspicion that drug evidence was being destroyed, that the parties inside were arming themselves, or that they were attempting to flee or resist arrest, and, thus, an immediate forced entry would have been justified regardless of the amount of time which elapsed after the announcement. The above erroneous findings of the trial court to the contrary are manifestly erroneous and are hereby reversed.
The trial court omitted discussion of the amount of time that elapsed from the knock-and-announce to entry but concluded that it was not sufficient. Because the amount of time between announcement and entry is of key importance in a reasonableness determination, we now turn to the evidence to settle this detail.
Taking the testimony of the officers and the Williamses, we now determine that at least five but as much as fifteen or more seconds elapsed from the time the police knocked and announced their presence until they entered the dwelling. Testimony and statements from the officers, Mr. Williams, and Mrs. Williams indicated that the officer's presence had been detected and that the occupants were running around inside the house in response.
As the trial court implicitly found, Detective Pardo estimated that they knocked for "several seconds" before employing the battering ram and Mr. Williams heard the loud banging of the battering ram at their door for about fifteen seconds before the police entered his home. This means, in all likelihood, that more than fifteen seconds elapsed from the announcement to the entry, well above the five second threshold that courts have generally employed as the test of whether a constructive denial of entry has occurred. In this amount of time, the Williamses could have responded and voluntarily allowed the police to search their residence. However, they did not. The Williamses both stated that they were close by and watched the *827 front door as the police attempted to enter. They made no attempt to stop the police to allow them to enter, but remained silent, allowing the battering to progress to its fruition. Consequently, the Williamses constructively denied entry and the trial judge's fact finding to the contrary is manifestly erroneous.
We refuse to create a bright-line rule for all cases as to the amount of time appropriate for officers executing a warrant to wait to enter after knocking and announcing. We do pronounce that the officers in this case waited long enough after knocking and announcing their presence and purpose, although there was enough information available to provide the officers proof of exigent circumstances which would allow them to enter immediately and with force upon seeing the lights on, figures running within the residence in apparent response to their announcement, and with the understanding that they were serving a warrant to search for drug contraband. Furthermore, we provide the following guideline to the courts: In determining the reasonableness of an entry made upon a warrant to search and after announcement, the court must ascertain the sufficiency of the time that elapsed between the commencement of the "knock-and-announce" and the actual police "entry" into the home. This guideline is not to say that there must always be a knock-and-announce when police are executing a warrant to search as La.Code Crim. Proc. arts. 164 and 224 explicitly provide that the police may omit announcement where to do so would imperil the arrest.
The burden of proof is generally on the defendant to prove the grounds recited in a motion to suppress evidence. La.Code Crim. Proc. art. 703(D); State v. Seward, 509 So.2d 413 (La.1987). Since search and seizure of evidence was conducted pursuant to search warrant, defendant had burden to prove grounds of his motion to suppress, but failed to meet this burden.

CONCLUSION
Given the undisputed evidence, that the officers knocked and announced their intentions before entering the residence, and given the officers' observations, they were reasonable in believing that a longer wait might have resulted in the destruction of evidence or otherwise imperil the arrest. The totality of the circumstances leads to the conclusion that the force used was reasonable. Therefore, the officers' actions did not violate our knock-and-announce principle nor defendant's Fourth Amendment Rights. Accordingly, the lower courts erred in granting defendant's motion to suppress.
For the forgoing reasons, we reverse the trial court ruling granting defendant's motion to suppress the cocaine seized in his residence. The motion to suppress is denied. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CALOGERO, C.J., and JOHNSON, J., dissent and assign reasons.
CALOGERO, Chief Justice,* dissenting.
I respectfully dissent. The basic purpose of the knock-and-announce requirement is to give notice to the occupant of premises which is the subject of a search warrant in order to avoid a forcible entry by law enforcement. When police do not provide an occupant with adequate time to respond to their knock and announcement, the purpose of this requirement is defeated. While I agree with the majority that the amount of time that must elapse before an occupant's lack of response may be construed as a refusal of admittance depends greatly on the circumstances of each *828 case, in this case I do not believe the police officers in this case could reasonably construe the occupant's failure to respond in the few seconds that elapsed between the officer's knock and announcement, and forcible entry, as a refusal of admittance. Therefore, I would not reverse the findings of both the district court and court of appeal on this essentially factual determination.
JOHNSON, J., dissenting.
We granted this writ application to determine whether sufficient time elapsed between the time the police officers knocked and announced their presence to execute the search warrant, and the time the officers battered down defendant's front door. While I agree with the majority that it is impossible to create a bright-line rule, I believe that it is imperative that we rely on trial judges to listen to evidence, make credibility determinations, and decide what is reasonable under the circumstances. In this case, after hearing the testimony of all of the witnesses, the trial judge concluded that the officers did not wait an appropriate amount of time after knocking and announcing before they forced their way into defendant's home.
Moreover, in order to justify this forced entry at 4:30 a.m., these officers needed to show exigent circumstances. I find no evidence in this record to support a presumption that drug evidence was being destroyed, or that the occupants of this residence were arming themselves. Any testimony that the residents might attempt to flee or resist arrest is sheer speculation.
For the aforementioned reasons, I would affirm the trial court's ruling to suppress the evidence seized pursuant to the search warrant.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] After the tactical entry, defendant emerged from his bedroom armed with a gun and was shot two times by one of the officers.
[2] There are cases in the federal circuit courts of appeals dealing with the amount of time required of federal officers under the federal "Knock-and-Announce" Statute, 18 U.S.C.S. § 3109. Generally, a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109. United States v. Moore, 91 F.3d 96, 98 (10th Cir. 1996) (officers waited 3 seconds at most and the government failed even to allege that the officers harbored a concern for their safety); United States v. Lucht, 18 F.3d 541, 550-51 (8th Cir.1994) (waiting 3 to 5 seconds before entering was not long enough); United States v. Rodriguez, 663 F.Supp. 585, 587-88 (D.D.C. 1987) (delay of 3 to 5 seconds was insufficient); United States v. Marts, 986 F.2d 1216, 1217-18 (8th Cir.1993) (lapse of less than 5 seconds held not sufficient to infer refusal of admittance necessary to comply with § 3109); United States v. Nabors, 901 F.2d 1351, 1355 (6th Cir.1990) (forced entry only seconds after announcing the officers' authority and purpose must be "carefully scrutinized"); United States v. Mendonsa, 989 F.2d 366, 370 (9th Cir.1993) (waiting 3 to 5 seconds was insufficient). However, when officers have waited more than 5 seconds, the courts have generally held that there was no violation of § 3109. United States v. Markling, 7 F.3d 1309, 1318 (7th Cir.1993) (officers waited 7 seconds before starting to try to knock the door down); United States v. Spriggs, 996 F.2d 320, 322-23 (D.C.Cir.1993) (officers waited 15 seconds before attempting to enter); United States v. Ramos, 923 F.2d 1346, 1355-56 (9th Cir. 1991) reversed on other grounds United States v. Ruiz, 257 F.3d 1030 (9th Cir.2001) (after two requests and 45 seconds); United States v. Myers, 106 F.3d 936, 940 (10th Cir.) (agents waited 10 seconds before battering the door down), cert. denied, 520 U.S. 1270, 117 S.Ct. 2446, 138 L.Ed.2d 205 (1997); United States v.. Knapp, 1 F.3d 1026, 1030-31 (10th Cir. 1993) (10 to 12 seconds was sufficient to wait); United States v. Gatewood, 60 F.3d 248, 250 (6th Cir.1995) (no violation when officers waited about 10 seconds between announcement and entry).
[3] § 3109 Breaking doors or windows for entry or exit.

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
[4] In some instances people in bed have been found to need more time to respond to the police search warrant announcement. In Jeter v. Superior Court, 138 Cal.App.3d 934, 188 Cal.Rptr. 351 (1st Dist.1983), held that police officers executing a search warrant at the defendant's home could not infer a refusal to admit, as required by Cal.Penal Code § 1531, from the five to ten second lapse between the officer's knock and announcement and their entry into the home. Testimony at the preliminary hearing revealed that police officers arrived at the residence at 11:00 a.m. without prior surveillance to serve a search warrant. One officer knocked on the front door and yelled, "police officers, we have a search warrant." He waited a "few seconds" and knocked and yelled again. After waiting "five or ten seconds," he turned the handle and pushed open the door. On entering the residence, the officer found the defendant awake but in his bed. See also People v. Benjamin, 71 Cal.2d 296, 78 Cal.Rptr. 510, 455 P.2d 438 (1969); People v. Hoag, 83 Cal.App.4th 1198, 100 Cal.Rptr.2d 556 (3d Dist.2000).